Butch v. Lash.

---

## BUTCH *v.* LASH.

Where the complainant filed his bill in Chancery, praying for an injunction to enjoin the respondent from proceeding in an action at law to recover the possession of a certain town lot, claiming title to said lot through one L.; and where the bill alleged, that the complainant was in possession of the lot at the time of the commencement of the action at law, and had been long before the purchase of the lot by the respondent; that in 1845, the lot was sold to L. by the county of Keokuk, who paid a portion of the purchase money, and obtained a bond for a deed; that he subsequently paid the entire consideration, and obtained a deed; that said deed was never recorded, and is now lost; and that L. had gone to parts unknown, the allegations of which petition, were sustained by proof; and where, on the final hearing

· of the cause, the respondent was perpetually enjoined from further prose-
cuting his action for the possession of the lot;

*Held,* 1. That the complainant had no such complete defence at law, against
the action for the possession of the lot, as that a court of equity could not
take cognizance of the complainant's bill.

2. That the evidence was sufficient to sustain the decree.

3. That the possession of the complainant was sufficient to put the respondent
upon inquiry, before purchasing.

## Appeal from the Keokuk District Court.

. Lash brought his action against Butch, to recover a cer-
tain town lot in Sigourney, in Keokuk county. By his pe-
tition he shows that he claims title under a deed from the
county judge of said county, of date March 24th, 1855.
After that suit was commenced, Butch filed his bill in Chan-
cery, praying that said proceedings at law might be enjoined,
for reasons therein stated. The injunction was granted—
the bill answered, and testimony taken—and on a final
hearing, Lash was perpetually enjoined from further prose-
cuting his said action. Lash appeals, and claims—first, that
the defendant's remedy was complete at law; and second,
that under the proof he was not entitled to the relief claimed.
The facts of the case are sufficiently stated in the opinion of
the court.

*Wm. Loughridge,* for the appellant.

*Knapp & Caldwell,* for the appellee.

WRIGHT, C. J.—To determine the first question, it be-
comes necessary to refer briefly to the case made by the
pleadings and proof. Both parties claim title from Keokuk
county. The complainant was in possession at the time of
the commencement of the action, and had been for some
time prior to respondent's purchase. By the bill, Butch
claims, that in 1845 this lot was sold by the county to one
Linder, who paid a portion of the purchase money, and ob-
tained a bond for a deed; that Linder subsequently paid
the entire consideration, and obtained a deed; that said deed
was never recorded, and now is lost; and that Linder has

gone to parts unknown.  He also claims, and shows by his exhibits, that Linder sold to one Moody, he to Schilling, he to McIntosh, who conveyed to complainant, by deed of April 3, 1854.  All of these deeds, except the one to Linder, were on record at the time Lash obtained title.  Upon the supposition, then, that there was a deed made to Linder, as claimed by complainant, which has been lost, and never recorded, the question is, whether his defence to respondent's action was so complete in law, as that a court of equity could not take cognizance of this bill.  And this question must be answered in the negative.  In the first place, we remark, that the chancellor takes jurisdiction in such cases, where the party complaining either has no remedy at law, or where his remedy is imperfect and inadequate; and therefore, if under the circumstances disclosed, the complainant could not perfectly and adequately be heard in his defence on the law side of the court, he had a right to resort to equity to prevent the commission of a wrong by the respondent's suit, and to insure the administration of that justice to which he was entitled.  The respondent's action was brought to test the legal title to this property, and in the legal forum, he was entitled to succeed, if his title, in this respect, was superior to that of complainant.  Owing to the loss, and failure to record the deed to Linder, complainant was unable to show a complete chain by the title papers or record.  And, under such circumstances, we think he was fully justified in asking equitable aid to ascertain the existence of such deed. · We cannot say that his defence would have been adequate and complete at law.  .

But a further and conclusive consideration in favor of the bill, is, that complainant asked equitable interposition on the ground of accident, and to remove a cloud upon his title. To relieve against an injury resulting from accident, is a very ancient branch of equitable jurisdiction; and by this term, in the language of Mr. STORY, "is intended, not merely inevitable casualty, or the act of Providence, or what is technically called *vis major*, or inevitable force, but such unforeseen events, misfortunes, losses, acts, or omissions, as are not the

result of any negligence or misconduct in the party." 1 Eq. Juris. § 78. And again: it is said, that the usual instance of such relief, is where a bond or other security has been lost, burned, or accidentally canceled. 1 Eden on Inj. 16. And see *Preston* v. *Daniels*, 2 G. Greene, 536, and the authorities there cited.. The loss of the deed is expressly shown by the complainant's sworn bill; there is no pretence that it occurred from any negligence or misconduct on his part; the respondent had procured a conveyance from the county, which was a cloud upon complainant's title; and to avoid the effect of this loss, and remove this cloud, he might reasonably and properly ask relief at the hands of the chancellor.

That the decree below was justified from the proof, we entertain no doubt. Appellant's counsel claims, that he was a purchaser without notice of any prior adverse title. This is fully negatived by the testimony, however. When he purchased, the bond given to Linder, as well as the certificate of the county agent, were marked canceled, and on file in the office of the county judge, and he was advised by that officer, when negotiating, that the lot had been contracted to Linder. From entries or memorandum appearing on these papers, and on the records of the commissioners of the county, it further appeared, that Linder had complied with his contract, and that a deed was made to him in July, 1846. From the proper records, it is also shown, that the property had passed by regular conveyances from Linder to complainant. In addition to all these circumstances, complainant was in possession, which was sufficient at least to put Lash upon inquiry before purchasing. This inquiry he appears to have made, and in doing so, is shown to have acquired such knowledge of the title, as to entirely preclude the belief that he was an innocent purchaser, without notice.

Decree affirmed.