## Daniel Shurtz v. The Schoolcraft and Three Rivers Railroad Company.

Under the General Railroad Law of 1855, a railroad company was organized, with articles of association, which fixed the amount of capital stock, and named five

commissioners to open books for subscriptions to the stock. The commissioners, however, never opened such books, but a subscription paper was circulated by an agent' appointed by the directors, and the plaintiff in error subscribed a sum thereon, which he subsequently, on several occasions, promised to pay. *Held*, that the subscription thus made was not binding.

The commissioners act as a statutory board, and derive their powers from the law and not from the corporation. No one else was authorized to receive subscriptions, and the commissioners were not required to recognize or protect any stock not subscribed for on their own list. The subscription in question not being under their auspices, is not binding on them, and could not prevent other parties from taking the entire amount not subscribed by the original articles, whenever the commissioners should see fit to proceed and perform their duty. There was therefore no consideration for the promise of the subscribers.

Under the General Railroad Law of 1855, no levy of assessments could be made until the whole amount of the capital stock specified in the articles was subscribed.

*Heard October 18th and 19th. Decided October 30th.*

Error to St. Joseph Circuit. The case is sufficiently stated in the opinion.

*W. Saviers* and *C. Upson*, for plaintiff in error, insisted that the subscription was not binding on the subscribers; 3 *Kent*, 33 ; *A. & A. on Corp.* 210, 212; 26 *Wend.* 685 : 4 *D. & R.* 117; 2 *B. & C.* 602 ; 2 *Louis. R.* 568 ; 6 *Paige*, 497 ; 4 *Mass.* 595 ; 12 *Mass.* 237 ; 8 *Serg. & R.* 521 ; 12 *Wheat.* 113. (2) No assessments could be made until the whole capital stock was subscribed : — 2 *Gray*, 277; 6 *Pick.* 23 ; 9 *Pick.* 187 ; 6 *Cush.* 50; 8 *Cush.* 110; 13 *Met.* 312; 10 *Fost.* 390; 40 *Me.* 192; 1 *M. & M.* 151; 2 *B. & Ald.* 518 ; 9 *Cush.* 423; 39 *Me.* 571, 587 ; 34 *N. H.* 124.

*H. H. Riley*, for defendant in error.

CAMPBELL J.:

Defendant was sued upon a subscription to the stock of plaintiffs, made December 18, 1855. It appears from the finding, that the company had been previously organized, by an original subscription and filing of articles under the General Railroad Law, and that five commissioners were named in the articles to open books for further subscriptions under the statute. The amount of capital stock,

fixed by the articles of agreement, was $130,000, divided into 5200 shares of $25 each. The directors, by vote June 14, 1855 (which was during the same month when the organization took place), passed a resolution instructing the commissioners to require payment of five per cent. upon all subscriptions when made. The court finds that the subscription was made on a subscription paper, circulated by an agent appointed by the board of directors, and that no books of subscription were opened. It is not found that the commissioners or any of them acted in the matter. It is found that the whole amount of stock was never subscribed. The directors called assessments from time to time, up to the full amount of each share subscribed. Defendant never paid any portion of his subscription, but on divers occasions promised to do so. It is also found that he voted at a stockholders' meeting after he made his subscription. The subscription is in the following terms:

"*Dec. 18th*, 1855. *Schoolcraft and Three Rivers Railroad Company stock subscription.* We, the undersigned, agree to take the number of shares of stock in the Schoolcraft and Three Rivers Railroad Company, which is set opposite our names respectively, and bind ourselves, our heirs and executors, to pay for the same in monthly instalments, to the order of the president and directors of said Railroad Company, or their agent or attorney, for the purpose of constructing or building said road, whenever called upon so to do; which instalments shall not exceed twenty per cent. at any one time.

| Names. | Shares. | Amounts. |
| --- | --- | --- |
| Daniel Shurtz, | 10 | $250.00 |
| Daniel Shurtz, | 10 | $250.00 |

To be paid in one year."

The court below found the facts in writing, and made several rulings of law, which were excepted to. Judgment was given for the full amount claimed.

The principal legal questions arising on this finding, relate to the validity of the subscription, and the right to levy assessments upon it, if valid, before all the stock was subscribed.

The General Railroad Law contemplates that, after the organization is made legal, by filing articles in proper form after payment of five per cent. upon the preliminary subscription of $1000 per mile, the commissioners named in the articles shall open books of subscription to the capital stock from time to time, at such places and on such notice as a majority of them shall direct; and shall keep open the books until all the capital stock shall be subscribed. Provision is made for an equal distribution in case the subscriptions exceed the sum fixed. After the whole sum is subscribed and distributed, they are to call a stockholders' meeting to choose directors. *L.* 1855, *p.* 153–4–5, §§ 1, 2, 3, 4.

These commissioners act as a statutory board, and derive their powers from the law and not from the corporation: — *Walker v. Devereaux*, 4 *Paige*, 229. They are expressly required to give notice of the times and places fixed by them for receiving subscriptions, and to keep their subscription books open. The design of the law was to enable all persons to subscribe upon equal terms. No one else was authorized to receive subscriptions, and they were not required to recognize or protect in their distributions any stock not subscribed for on their own lists. It follows, of necessity, that no person could by any other means obtain any assurance that he would be entitled to any share in the concern, and any subscription made without such assurance would be void for want of mutuality.

It is unnecessary to decide whether the subscriptions must be made literally in books, although such a course would be certainly much safer and less liable to mistake and abuse. Nor is the question whether, after the books are legally opened for subscription, any portion of the

work may not be done by single commissioners, or by clerks or other agents under the immediate inspection of the commissioners or some of them. The case does not find that the commissioners ever opened subscription lists, or did any other act required by law. If we were at liberty to look outside of the finding into the evidence, there is nothing to show any agency of the board whatever, and no proof that more than one of their number authorized any subscription. But the finding is entirely silent upon this. The statute requires a majority of the commissioners to determine when and where subscriptions are to be taken, and their duty continues until the whole amount of stock is subscribed and distributed. The subscription in question, not being made under their auspices, is not binding on them, and could not prevent other parties from taking the entire amount not subscribed by the original articles, whenever the commissioners should see fit to proceed and perform their duty. There was no consideration, therefore, on which to base Shurtz's promise.

We are also of opinion that, had the case found a legal subscription, any levy of assessments was premature. The case finds expressly, that all of the stock was not subscribed. How far the act of 1857 modifies the power to call in subscriptions till this is done, is immaterial in this case, as all that was done here preceded the passage of that act. It is quite common in our special charters, and in some of our general laws, to permit corporations to proceed in the exercise of all their powers before their stock is all taken. When this is allowed, there is usually an express limitation, unless it is fairly to be deduced from other plain provisions. But the General Railroad Law (at least as it existed before the amendment referred to) contains no provision from which such an intent can be deduced. It allows each company to fix its own stock, but it must not fall short of $4000 per mile for flat rail, or $8000 per mile for heavy rail (see section 1). When

we compare this provision with the requirement that the commissioners shall keep their books open until all the subscriptions are full, and then call a meeting to elect directors at which they are to act as inspectors (§§ 3, 4, 5), we can not resist the inference that the act was designed to prevent any company from proceeding without an assurance of genuine capital adequate to ensure the building of the road entirely, or far enough to make it a safe security for loans to finish it.· Persons subscribing have a right to rely on the completion of the stock subscriptions, as some assurance that their means will not be absolutely thrown away. And it is fairly presumable that broad grounds of public policy, to prevent gambling in inflated securities, and obtaining money under false appearances, were not left out of sight by the Legislature. Several cases were cited on the hearing, which held that the subscribers could not lawfully be called on to pay any assessments until either the whole stock or such minimum as the corporate law prescribed should be taken. The reasons given for this ruling are convincing, and ought to prevail.

Upon the finding of facts, we think the defendant below was entitled to judgment in his favor. The judgment below must be reversed with costs, and a judgment must be entered in his favor in this court. As the errors upon which we decide the cause arise upon the record, and do not impeach the finding, it is not a case for a new trial.

The other Justices concurred.