Leffler v. The City of Burlington.

## Leffler v. The City of Burlington.

1. **Public grounds:** ADJACENT OWNERS. The purchasers of property who acquire title with reference to a plat of the town in which it is situated, also acquire as appurtenant thereto a vested right in and to the use of adjacent grounds designated as public grounds in such plat, which right cannot be divested by the owner making the dedication, nor by the town in its corporate capacity.

2. **Burlington:** PRE-EMPTION. A claimant to a preëmption right consented that the land should be platted as a portion of the town of Burlington, under the acts of Congress of July 2d, 1836, and March 3d, 1837, and that a subdivision thereof should be set apart as a market square, upon the condition that it should be improved as such by the corporation within a reasonable time; after which the preëmptor perfected preëmptions upon other parcels thus subdivided to the extent authorized by law, without asserting any claim to such market square. *Held,* that a court of equity could give him no remedy for a failure of the corporation to comply with the condition upon which he assented to the setting apart of such square.

*Appeal from Des Moines District Court.*

Friday, April 14.

THE facts are stated in the opinion of the Court.

*Grant & Smith* for the appellants.

*C. Ben Darwin* for the appellee.

LOWE, J. — The case, in its condensed and essential particulars, is comprehended in the following statement of facts, as gathered from the pleadings and the evidence establishing the same :

In December, 1835, the plaintiff and his brother Absalom purchased of Amasa Doolittle and S. S. White, a settler's claim to some twenty or thirty acres of land situated in lower Burlington, and which forms a part of the present site of said city.   In the spring of 1836, they fenced this land, and had the same, or a part thereof, surveyed and laid off into town lots.   In the summer of 1837 or 1838, some time before the commissioners appointed by the United States Government, under acts of Congress passed July, 1836, and March, 1837, for laying off Burlington and other towns in Iowa, then the territory of Wisconsin, the plaintiff entered into a contract with the town council of Burlington (then an incorporated town), whereby he agreed that the commissioners aforesaid, in surveying and making the government plat of said town, might dedicate to public use under the designation of "*market square*," a portion of his ground, which they accordingly did with the full acquiescence of the plaintiff; and in doing so, the survey and laying off of this square into town lots previously, by the plaintiff and his brother, was set aside and rendered nugatory.   It may here be suggested, that, anterior to all this, an amicable division of the lots laid off by the plaintiff and his brother Absalom, of the land aforesaid, had taken place, whereby the east half of said market square fell to the said Absalom, and the west half to plaintiff, to whose portion this controversy is limited.

The consideration of the contract aforesaid, whereby the plaintiff consented that the commissioners aforesaid should dedicate the west half of said square to public use, was that the town would, in a reasonably short time, improve the same as a market place, which it was expected would benefit and render more valuable the plaintiff's other lots lying in the same neighborhood; that the city, agreeably to the terms of the contract, did, within a very few years thereafter, attempt to build a market house, by laying the foundation, but afterwards abandoned the undertaking, which abandonment has become permanent, inasmuch as the city has purchased other grounds and erected a large market house thereon.

In this state of case, the plaintiff claims that the condition subsequent, contained in said contract, has been broken by the city, and that his right and interest in the west half of said market square has in law reverted to him, and hence he prays in his bill that the defendant may be decreed to convey the same to him, and that his title should be established and that he have possession, &c.

Assuming the above facts to be true, the question arises whether the plaintiff can have the relief he asks. The answer to this simply involves the inquiry whether the defendant has in the west half of the market square in question, any right, title, interest, benefit or advantage received from the plaintiff which it ought to restore to him. It is very plain the defendant has derived no estate or title to this land from the plaintiff, nor yet from the government; and hence it has no interest of this description to give back to the plaintiff. What, then, is the nature of the defendant's interest in the land? Simply the use of it as an easement, which is a privilege distinct from the ownership of the soil, derived not from the plaintiff but from the government, the owner of the soil, and which alone could dedicate it to public use. And

1. PUBLIC GROUNDS: adjacent owners.

having done so, and sold lots to various purchasers with reference to a plat of the town on which said land is dedicated to the public use by a given and prescribed designation, as other public squares, streets and avenues are, all such purchasers acquire, as appurtenant thereto, a vested right in and to the use of the same, from which they cannot be divested by the owner making the dedication, nor by the town in its corporate capacity, was it disposed so to do. *Cincinnati* v. *White's Lessees*, 6 Peters, 431; *Barclay* v. *Howell's Lessees*, 6 Id., 498; *The City of Dubuque* v. *Malony*, 9 Iowa, 450, and various authorities there cited.

This right to the use of said square as a public easement is the only interest whatever which the town or the inhabitants thereof have in the same. And inasmuch as this was derived in virtue of a dedication from the government alone, there can be no obligation, as there is no way of responding to the prayer of the plaintiff.

But let us look at the equity of the plaintiff's claim. His application for relief is founded upon the idea that he 2. Burlington: preemption. has surrendered some right which he otherwise would have enjoyed, but for the contract made with the city, and which it has violated. What did he surrender? If anything, it must have been his right to preëmpt from the government the west half of this market square. But did such right in fact exist? To preëmpt town property was a very unusual thing, and the right to do so in this case only existed under two special acts of congress, one dated the 2d of July, 1836, the other the 3d of March, 1837; both of which will be found in the Code of 1851, at pages 535-537. These acts made it the duty of the commissioners, appointed to lay off Burlington and other towns, to divide the lots into three classes, and to allow the first class to be preëmpted at $40; the second at $20; and the third at $10; by each and every person who shall have obtained, prior thereto, from the agent of

the United States, a permit to occupy any lot or lots, or who shall have by building or inclosure actually occupied or improved any lot or lots in said town, provided no preemptor shall be allowed to purchase more than one acre of ground to embrace improvements already made.

Now, in the first place it does not appear from the evidence that the plaintiff had any permit as aforesaid to occupy lots in Burlington, or that he actually occupied or built upon any lot, but that he ran a fence around a great number of lots which he had laid off as an addition to the town.

Whether this was such an improvement as the acts of congress contemplated, is, to say the least, doubtful, for the reason it was not confined to any specific lot or lots with a view to occupancy or preëmption. But waiving this, inasmuch as the plaintiff's preëmption right was limited to one acre, it is very clear that he had no claim to have a great many more lots than he was entitled to preempt, and was compelled to and did let many of them go.

Many that he thus relinquished were situated near to the west half of Market square, some of which, it is believed, locally were more eligible than the five lots which constitute the west half of such square.

The reason of this, to our minds, is plain. He had enough better lots in other localities, to secure which exhausted all the preëmption right which he had under the acts of congress aforesaid. How, therefore, are we to know that the plaintiff would have in part preëmpted the five lots composing Market square, if the contract spoken of had not been entered into with the city? The probability to our mind is, that he would not, because they were subject to overflow from high water in the Mississippi river, and he had more lots in much better localities than he had a right to purchase under the preëmption statutes. As he was not entitled to all, it is not very reasonable that

he would have selected the inferior to the more eligible lots. At least if it was his purpose to do so, he should not only have alleged the same in his petition, but he should have shown and established his right and his intention to have preëmpted the ground or lots in question to the exclusion of, or in preference to, his other lots. This is not done.

But aside from this apparent want of equity in the plaintiff's claim, we say in conclusion that if it was competent for the court to award him what he prays for, what would it avail him? The defendant cannot give him that which it has not itself, namely, the title; nor the use. The latter is in the public at large. The defendant can regulate it, but cannot disturb it. If we should decree that the plaintiff should have what he claims he lost, namely, the right to preëmpt these lots, we ask, to what end? It would serve him no purpose. We have seen that he has already exhausted, under the law, all the right he had as a preëmptor in the purchase of other lots. The simple matter of fact is, that the relief which the plaintiff asks is wholly out of the reach of the court and the defendant.

Therefore, without determining that the plaintiff might not recover against the city, the damages sustained by him, under the contract for the erection of the market house, we unite in the conclusion that the relief asked in the case was properly denied.

Affirmed.