N. J. BAYARD, plaintiff in error, *vs.* MALINDA HARGROVE *et al.*, plaintiffs in error.

The same parties *vice versa.*

When the owner of a tract of land lays it off for a town, publishes a map of the lots, streets and lanes, and sells out the lots on a street to others, and the town is established as designated in the map, the owner of the land will be presumed to have dedicated the streets and lanes to the public, and if one of them be diverted from the purposes designated, as if under a sale from the city authorities, a house be builded on land that is part of the street, this does not authorize the original owner of the tract to sue in ejectment for the land so built upon. The title of the land is in the public, for the uses designated, so long as the town exists. If the street be abandoned by the public, *prima facie*, the reversion would be in the owners of the abutting lots, unless the injured grantor had in express terms reserved the right to himself in his deed conveying the lots, or in his act of dedication.

Streets.    Dedication.    Before Judge PARROTT.    Floyd Superior Court.    July, 1871.

This was ejectment by Doe upon the demise of the heirs-at-law of Z. B. Hargrove, against Roe, casual ejector, and said Bayard and another, tenants in possession, for the one-half undivided interest in a strip of land thirty-three feet wide, in Oostanaula street, Rome, Georgia. The defenses were the general issue and prescription.

Bayard *vs.* Hargrove *el al.*

Plaintiff traced title from the State into his lessors to the lot of land containing the premises in dispute, proved the possession by the defendants, and the annual value of the premises for rent, and closed.

For the defense it was shown, as follows:   In 1834, Hargrove and others proposed to the Inferior Court of said county to give to them and the people of said county, parcels of said land lot, to be selected by said Court for a Court-house, jail, etc., etc., and "half of the proceeds of the sale of town lots on said lot of land," and keep up a ferry, etc., if they would permanently locate the county site at said place, and that this proposition was accepted and acted upon.   The land was laid off into lots and streets, including said street, and the lots were sold.   What the terms of the deeds to purchasers were, did not appear.

In 1849 or 1850, the Mayor and City Council of Rome concluded to sell a strip on each side of said street, from river to river, thirty-three feet wide, and ordered the same to be done.   In 1850, one Johnson bought the premises in dispute from the said Mayor and Council, and took possession of it and began building upon it.   From him, title was traced into the tenants in possession, and it was shown that they, and those under whom they claimed, had been in the actual possession of the premises and buildings thereon since 1852 till the commencement of this suit in March, 1869.   Evidence, *pro* and *con.*, was introduced as to the *bona fides* of this possession, etc.   There were six heirs-at-law of Hargrove, and to the prescription as to one of them, Mrs. Fort, it was replied and shown that she had been under coverture sufficiently long to avoid prescription.   There was evidence of a sale by Hargrove to Shorter, but it is not material.

Pending the trial, various questions arose as to the admissibility of evidence, etc., but they are not passed upon here. The Court charged the jury as follows :

"This is an action brought by the heirs of Z. B. Hargrove, deceased, against N. J. Bayard, tenant, etc., for the recovery

of a certain store-house and lot in the city of Rome, Georgia. The plaintiffs claim title to the property as the heirs-at-law of Z. B. Hargrove, deceased, who, they allege, was the owner of the soil. They claim that this property is in the street, and that the street was dedicated to the town of Rome, or the county of Floyd, for public use as a street; that the public was entitled to use it as a street only; that it has been abandoned by the city of Rome as a street, and that, as Z. B. Hargrove did not part with the title to the soil, they now own it as heirs-at-law.

"If this street was permitted to be used as a street by the town of Rome, and it belonged to the plaintiffs, or any one else, the title to the soil does not pass to the town or county, unless there was a deed to the soil. When the owner of land is paid for a road or right-of-way over his land only, the county in which the road lies cannot transfer the land when the road or right-of-way is abandoned. But if such owner had made a fee-simple deed, then the city or county could transfer the title, if it did not interfere with the right of others. If there was no fee-simple deed to this lot, and it had been abandoned, then it reverts to the former owner or proprietor, or his heirs-at-law. There are two modes of showing title to land: one is by showing a chain of paper titles, beginning with the grant from the State and bringing the title down to the plaintiff in the action; all titles to lands emanate from the State. The plaintiffs insist on a perfect paper title to one undivided half of this land from the State of Georgia. You will, therefore, see, first, if there is a grant from the State of Georgia to lot number two hundred and forty-five, in the twenty-third district and third section of this county, and if so, whether this property is part of that lot. See to whom the State granted the lot. If it was granted to one Major Pace, then his title is perfect; next, you will see to whom did Pace make title. See if he made a title, as is claimed, to Phillip W. Hemphill, according to the forms of law; if he did, then that passes a perfect title to the lot to

Hemphill.   Then see if Hemphill sold one undivided fourth part to Z. B. Hargrove, deceased, and made a title; next, see if Hemphill sold and conveyed, by deed, an undivided fourth to William Smith, and if so, whether Smith sold to said Hargrove, deceased, that undivided fourth.   If you find that the title has been conveyed in this way, according to law, then the evidence shows a title to one undivided half in Z. B. Hargrove, and it remains in him until divested in some way or other.   If said Hargrove died intestate, then all his lands passed to his heirs-at-law; you will, therefore, see, from the evidence, who these heirs are; if the plaintiffs are the heirs, then they have the title until it is legally divested; and if it is shown now to be in them, they are entitled to recover, unless it is divested in some legal way.   The defendant places his defense, first, upon the contract between the original town company and the Inferior Court of Floyd county for the removal of the county seat to Rome.   It is the duty of the Court to construe that contract.   The Court, therefore, charges, you, that the contract embraces a simple proposition to bind the parties to it to do certain things, and that the said contract does not convey the land in the city, except certain lots for a Court-house, jail, churches, etc., to the city or the county, and no title passes under it to the streets, and if there is no evidence showing that the title passed to the city or county, then the defense on this ground fails.

The plaintiffs must recover on the strength of their own title, and they cannot recover, unless they show title to the property.   The second ground of defense is, that there is an outstanding title to the property in another person, and that the plaintiffs have parted with the title; and to show this, the deed from the heirs of Hargrove to Alfred Shorter has been introduced.   It is the duty of the Court to construe this deed also.   The Court charges you that the difficulty arises on one clause in the deed, which is as follows : "And also all the right, title, claim or demand," etc.   (See copy of deed.) This is an independent clause in this deed, and if there were

no other descriptive words of the property intended to be conveyed, it would, of itself, make a complete conveyance of all the property of the kind in the town of Rome. The Court construes this cause to convey all the town property that was owned by Z. B. Hargrove, deceased, in the town of Rome. You will see, therefore, whether this property was town property at the time said Hargrove died. Did it belong to him at his death? If so, it is transferred by this deed. If, from the evidence, you find this lot was not town property, it is not conveyed by the deed; if it was town property, it is conveyed. You are to ascertain whether it is town property or not from the evidence. See what the people of this neighborhood understood by town property; what the words town property mean. If the evidence don't show that it was Hargrove's property at the time of his death, it does not pass under the deed. But if he owned the title in soil, it belonged to him. If he owned it, either in possession, remainder or reversion, it belonged to him. You must take into consideration the circumstances connected with the making of the deed—not considering any parol testimony to contradict, add to, or diminish its terms, and if you find that the title to this property passed under this deed, then the plaintiffs cannot recover.

The third point of defense is what is known as the Statute of Limitations. The Code changes the phraseology, and it is called now title by prescription, but the same rule applies in both instances, and the Code expresses what the law was before and since its adoption. The Acts of 1856, and the Acts in force prior to that Act, applies to that case. If the defendant, or those under whom he holds, have held peaceable and adverse possession of this land, as provided by the Acts and the Code, for seven years before this suit was begun, then the plaintiff's action is barred, unless they were under disability as provided by law. The same principles were laid down in the Code, as you will see from the following sections: 2636, 2637, 2638, 2639, 2640, 2641, which he read.

Bayard *vs.* Hargrove *et al.*

When the Statutes of Limitation are relied on, the possession must be such as named in the Code. It must be adverse, continuous, uninterrupted and peaceable, and under color of title. The defendants insist that Riley J. Johnson held such possession, from 1850 to the time he sold to William Ramey, and that Ramey held such possession until he sold to Bayard, and that Bayard has since held such possession. If either of them held such possession for seven years, and it was public, peaceable, etc.; if they claimed under a purchase with a deed or deeds, as a matter of right, and their possession was not simply *permissive on the part of the plaintiff,* then the defendant will be protected. You will see whether the property was claimed by these parties as their own; whether they were in the actual possession of it by an enclosure or building on the ground. Actual, adverse possession for twenty years will protect the defendant without a paper title; seven years with a paper or color of title will also protect him, unless he holds under a forged or fraudulent title, as set forth in the following section of the Code. (Section 2641.)

You will, therefore, see if there is any evidence that these titles are forged or fraudulent, and if there is none, and the defendant has held the land as stated, he will be protected, even though his title was a defective one. A bond for titles, or a deed with one witness, is a good color of title, and if the defendant, and those under whom he holds, believed they were buying the title, and acting in good faith, he will be protected against all parties not under *disability to sue.*

If any of the plaintiffs were minors, idiots or lunatics, or married women, then the statutes do not run against them until after they have arrived at full age, or their disabilities have been removed. The plaintiffs, by their counsel, reply to this last position of defendant, by saying that the erection of this building in the street is a nuisance, and that a nuisance can never ripen into a prescription; that the Statutes of Limitations do not run against a nuisance. This question of nui-

sance has nothing to do with the title to the property. A person injuriously affected by a nuisance, or the public, may abate it, as you will see from sections 4024, 4027 of the Code. (See the section.)

A person who had bought property with reference to this street, or a citizen of Rome, could abate the nuisance, and the Statute of Limitations would not run against such a person. One may acquire title to property by adverse possession, and use for a sufficient length of time, as when the owner of a mill overflows the land of another for twenty years or more; this would give him the title to the land, and the right to overflow it, as against the former owner; but if his pond caused sickness in the neighborhood, any one so affected by it, could abate it as a nuisance—but such abatement could not affect the title—the abatement of a nuisance has nothing to do with the title to the soil.

If you find the plaintiffs are entitled to recover, you will find the value of the rents of one-half of the property, and give a verdict for the amount. And if Mrs. Fort is only entitled to recover, you will find what her interest is, and give your verdict for such a part of the property and rents, as you may find to be due her. If none are entitled to recover, you will find for defendant, with cost of suit.

The jury found for only Mrs. Fort for one-sixth of an undivided half interest in the premises, with mesne profits.

Each side complained of the rulings and charges adverse to it, and sued out separate writs of error. Here the cases were argued and decided as one. The specific points made in the bills of exceptions and briefs are not reported, because this Court passed upon but one of them.

SMITH & BRANHAM, for Bayard. Plaintiffs cannot recover possession of a street for their exclusive use. As to abating nuisances, see Washburn on Easements, 569 to 591; R. Code, secs. 4024, 4027; 39 Ga. R., 202. Dedication to public irrevocable: R. Code, sec. 2642; Washburn on Easements,

Bayard *vs.* Hargrove *et al.*

139, sec. 20; 6 Vt. R., 355; 10 Peters R., 662; 1 Whart., 469; 27 Mo. R., 211; 18 Ohio R., 18; 8 B. Monroe (Ky.) R., 232, 247; 29 Mo. R., 356; 1 Sneed, 632; 9 Iowa R., 455. The owner can never retake an accepted dedication: Washburn on Easements, 140; 3 Vt. R., 521; 6 Wend. R., 651; 1 Ind. R., 432; 4th, 318; 10 John. R., 236; 22 Wend. R., 425; 24 Pick. R., 71; 6 Peters R., 498, 513, 431; 5 Taunt, 125; 4 N. H., 1, 13; 2d, 513; 5 Seld., 246; 35 Barb. N. Y. R., 395; 36 Penn. St. R., 29; 9 Wise Va. R., 240; 8 Metc. R., 236; 1 Sneed, 643; 12 Ga. R., 239. As to rights in highways and obstruction of same, see Washburn on Easements, 146(25); 36 Penn. St. R., 99; 2 Bay's So. Ca. R., 291; 6 Peters R., 498, 504; 29 Ga. R., 250. From these it appears dedicator has no more rights in dedicated streets than citizens. If once dedicated, and no provision made for forfeiture for misuser, no reversion to dedicator: 1 Ohio St. R., 478; 8 U. S. Dig., 15; 3d, 126; 8 B. Monroe (Ky.) R., 232.

UNDERWOOD & ROWELL; WRIGHT & FEATHERSTON; D. R. MITCHELL, *contra.* The owner of the fee in the soil of a road may maintain ejectment, etc.: Burr, 143; 2 Strange, 1004; 1 Wils. R., 107; 6 East. R., 154; 2 John. R., 363; 6 Mass. R., 454. Road abandoned, owner has right to possession: 6 Mass. R., 534; 10 Peters R., 25; 15 Howard R., 155; 26 Ga. R., 674. They cited various authorities to show that the authorities of a city cannot alienate its streets.

McCAY, Judge.

In the view we take of this case a great deal of the very learned and elaborate argument of counsel upon both sides is upon points which, though very material in one aspect of it, are yet unimportant in the determination, as we are of the opinion that the proprietors of this land, when they laid off the town, by lots, streets, lanes, etc., *and sold the lots,* parted with all

their rights over the streets, except so far as they or their children are part of the public.

It is, without doubt, true that the original owner of the soil retains the fee in himself when the public, in the exercise of its right of eminent domain, seizes a right of way over his land. And if the road or way be abandoned by the public, he has the right again to its exclusive use. But even in such a case, it does not follow that if the public permit a street or road to be obstructed, not abandoning the way, by this misuser, the right is lost, so that the original owner may sue for the land.

It is also true that, whilst, as a general rule, the ownership of a fee in a highway or street is *prima facie* to be considered as in the owners of the abutting land, yet this is only a presumption; and if the original owner of the land have sold the abutting premises, reserving his right in the soil of the street, or if his deeds so define the land sold as necessarily to exclude the fee in the street, then the fee remains in the original owner: Jackson ex dem. Yates *vs.* Hathaway, 15 John., 447; 6 Mass. R., 454; 10 Peters' R., 25; 15 How. R., 155; 26 *Ga. R.*, 674; 6 East. R., 154; Burrow's R., 143. And this rule, as to the reversion of the fee on the abandonment by the public of the road or way, may also apply to the case of an ordinary highway or other easement dedicated to the public, where nobody is interested but the dedicator and the public: Angel on Highways.

But there is a clear distinction by the authorities, and in the nature of the case, between a mere right of way seized by the public or dedicated to the *public* and the case made by this record. Here is a contract. The owner of the land proposes to lay out a town. He makes up a map, with the lots, streets, lanes, etc., marked upon it, and he not only agrees to dedicate the streets to the public, but he *sells the lots* abutting upon the streets. The public accepts the streets, the lot-owners buy the lots under these representations, and the

Bayard *vs.* Hargrove *et al.*

owner of the soil gets a consideration for his dedication in the increased price of his lots.

In this case there are three parties to the transaction, the owner of the land, the public, and the purchasers of the lots. And the whole affair is a matter of contract, for a valuable consideration. Especially is it true that there are more parties at interest than the public and the dedicator. The purchasers of the lots acquired a contract right in the street. They acquired the right to use it themselves, and the right to have the street open to all others whom they may desire to use it. This title is gone from the owner, except with the consent of the public and the lot owners. If the public were to forfeit or abandon it, this would not affect the rights of the lot owners. The owner of the land has parted with his right ever to assert his right to the soil to the injury of the easement.

If the street be obstructed or neglected by the public, there is a method of compelling the public authorities to keep open and unobstructed the street that, by a contract, was accepted. And even if it be abandoned by the public, the private right of the lot owners to its use remains. In the case of Barclay *vs.* Hansell, 6 Peters' Reports, 498, 504, the Court say: "Where the proprietor of a license disposes of his interest in it, he would seem to stand in a different relation to the right of soil in regard to streets and alleys of the same, from the individual of land over whose soil a public road passes, and who *continues* to hold the land on both sides of it." And again: "If the ground in controversy in ejectment had been dedicated for a particular purpose, and the city authorities had appropriated it to another and entirely different purpose, this might afford ground for a Court of chancery to compel the specific execution of the trust by restraining the corporation or by causing the removal of the obstructions." And this same doctrine is held in the case of Rowan's executors *vs.* The Town of Portland : 8 B. Monroe R., 236 ; Williams *vs.* First Presbyterian Church, 1 Ohio State R., 478 ; Guigar *vs.*

Filer, 8 Florida R., 332. And, as it seems to us, it is based on sound reason and equity. All that the owner of the soil sought by the dedication has been accomplished. It was not his purpose to favor the public. His purpose was to benefit himself, and that benefit he has fully secured. The town has been established, his land has been enhanced in value, and the lot-owners have paid him for his sacrifice. As one of the public he has his right to enforce the trust, but neither he nor the public can affect the rights of the lot-owners, which they have bought and paid for.

In this case there is no abandonment of the street by the public. The most that is claimed is that there is an obstruction in it. I do not think a case can be found where the original owner of the soil has been held to have the right to bring ejectment for the land on the ground that the public has permitted even a public road taken from him to be obstructed. Were he to recover the possession, then he would be obstructing the street.

When this street was laid off and the lots abutting upon it sold, and the lots upon the other streets sold, the owner of the tract parted with his right in the land to the public. The public authorities hold it for the uses proper for a street, to-wit: to pass over, and to use it as streets are usually used in towns and cities, to-wit, for drains, sewers, water-pipes, gas-pipes, etc., etc. And if the city directs it, the public or any private citizen injured may enforce the proper use.

As we have said, if the 'street be abandoned by the abandonment of the city, so that there is no use for streets and the whole becomes a farm, with no lot-owners to have rights, the street would, *prima facie*, revert to the owner of the rebutting land. Whether this last presumption is rebutted by the words of the deeds by which these lots passed out of the original dedicator, we do not say, as we have not the deeds before us. We should, however, be strongly inclined to hold that the *title passed* to the owners of the abutting lots, even

though the deeds were by metes and bounds, which by implication excluded the streets.

In cases like this, of a sale of lots upon a street dedicated by the vendor of the lots, there is an element that does not exist in the cases referred to by the counsel for the defendant in error, to-wit: 15 Johnson's R., 447; 10 Peters' R., 25; 13 Howard's R., 155. That element is, that this street was one of the inducements of the vendees to buy. The price of the land to the vendor was increased by his dedication of the street. Its precise width and the precise uses to 'which it shall be put are material to the owner of the abutting lands, and not to the original proprietor. Even its existence is a matter of which the original owner need not care, after he has parted with the other lots upon it. And we should require a very strict and precise description of lines in the original deed, showing something more than a reservation by implication, before we would hold the natural and legal presumption that the present owners of the abutting lots are the owners of the soil of the street, so laid out and so dedicated, to be rebutted.

We have not thought it necessary to decide the other points made, because, in our judgment, the case turns upon the point we have discussed, to-wit: the right of the plaintiff, or, indeed, of anybody, to maintain ejectment for this land, under the circumstances as they appear in the record.

Judgment reversed.