## HENDRIX *vs.* THE ACADEMY OF MUSIC.

1. If a written subscription for stock was, or appeared to be, complete within itself, a subscriber could not go outside of it, so far as concerns the conditions upon which the subscription was made; but where the writing does not purport to contain all the stipulations of the contract, parol evidence is admissible to prove other portions thereof not inconsistent with the writing.

(*a.*) A subscription in these words, "We, the undersigned, hereby subscribe for the amount of stock opposite our names, and agree to pay the same in four quarterly installments, viz., February 15, April 15, June 15 and August 15, for the purpose of forming a company to erect an academy of music," was, on its face, an incomplete agreement. It was entirely silent as to the location and nature of the structure, whether the company was to be a joint stock company or an incorporation, what amount was necessary to accomplish the object sought, and as to the mode and method of raising the necessary fund to complete and equip the building, the specific purposes for which it was to be used, and the way in which its business was to be conducted.

(*b.*) It will not do to assume that the contract is merged in the charter subsequently obtained. Whether the agreement, as understood by the parties thereto, is embodied in that charter, is the point in dispute, which can only be determined by testimony, which was rejected.

2. In 57 *Ga.*, 240, after a charter had been obtained, it was held that the subscriber contracted with reference to the charter, that the number of shares to be subscribed, or the whole capital stock necessary to do the contemplated business, constituted an important element in the contract, and that, if the amount fixed by the charter had not been subscribed, or having been subscribed, subscriptions had been released so as to reduce the capital stock materially, without the consent of the subscriber, his subscription could not be enforced against him.

3. It makes no difference that a subscription was made in anticipation of the formation of an incorporated company. Where the capital stock is fixed at a given sum, divided into shares of a certain amount each, the whole amount of the capital stock must be fully subscribed before an action will lie against a subscriber to recover assessments levied on the shares of stock, unless there is a clear provision in the contract to proceed with the accomplishment of the main design with a less subscription than the entire amount of the capital specified, or there is a waiver, either express or implied, of the condition precedent; and whether or not there has been such a waiver, is a question for the jury.

(*a* ) The pleas in this case, taken as a whole, constituted a good and legal defence, which should have been submitted to the jury, and it was error to strike them.

February 7, 1885.

Corporations. Stock. Charters. Contracts. Evidence. Pleadings. Fraud. Waiver. Before Judge SIMMONS. Bibb Superior Court. April Term, 1884.

Reported in the decision.

HILL & HARRIS, for plaintiff in error, cited on points decided, Thompson L. S., §120 ; Morawetz §§275, 265, 276, 287, 290; Code, §2857 ; 10 N. Y., 550 ; 7 Sim., 337 ; 1 Milne & C., 650 ; 17 N. Y. Sup'r Ct., 56 ; 30 Ala., 92 ; 8 Neb., 99 ; Code, §3802 ; 2 Whart. Ev., §§927-8 ; 36 *Ga.*, 669 ; 68 *Id.*, 448 ; 19 Ind., 214, 242 ; 15 *Id.*, 80 ; Morawetz, §§299, 309 ; 30 Ala., 92 ; 3 Dill., 496 ; 17 Tex., 560 ; 29 N. J. Eq., 188 ; Code, §§2634, 3173, 3177, 1003 ; 36 *Ga.*, 669 ; 34 Md., 318 ; 24 Barb., 518 ; 6 Cush., 50 ; 31 Md., 39 ; 24 N. Y., 150; 6 Bush., 443 ; Fox Dig., 55, 57, 61 ; Redf. Rwys., §§18, 51 ; Ang. & Ames, 528 ; 57 *Ga.*, 240 ; Green's Brice's Ult. Vir., 153 and cit.; Hale *vs.* Sanborn, Reporter, Vol. 18, No. 15, p. 472 and cit.; 17 *Ga.*, 515 ; Morawetz, 133, 259 ; 3 Add. Contr., §1342 ; 6 Bing., 776 ; 1 B. & Cress , 142; Lindley Part., 133; Wood Part., 1215 n, 1214 n ; Story Part., 86-7 ; 27 Md., 645 ; 39 Me., 571 ; 40 *Id.*, 172 ; 41 *Id.*, 512 ; 14 N. H., 543 ; 32 *Id.*, 363 ; 6 Pick., 23, 45 ; 9 *Id.*, 187 ; 10 *Id.*, 142 ; 2 Gray, 277 ; 8 *Id.*, 596, 303; 8 *Id.*, 110 ; 9 *Id.*, 423 ; 13 Metc., 311 ; 2 Hull, 504, 510 ; 9 Mich., 269 ; 61 Me., 384 ; 35 Iowa, 118 ; 5 Mees. & W., 2.

R. W. PATTERSON, for defendant, cited 16 Abb. Pr., N. S., 34 ; 32 Miss., 348 ; 43 Conn., 86 ; 6 Ind., 379 ; 49 Vt., 29 ; 20 Ohio St., 199 ; 34 Me., 369 ; 9 Fla., 299 ; Code, §2757 ; Morawetz, §269, note 3 and cit.; 54 *Ga.*, 289 ; Morawetz, §§307, 290, 371, 372, 312, 313, 403, 405, 33, 18, 20 ; 69 *Ga.*, 751; Ang. & Ames Corp., 523 ; Bliss Code Pl., 246 ; 4 Hun (N. Y.), 292 ; 12 Gray, 244 ; 56 *Ga.*, 230 ; 44 *Id.*, 597 ; 32 *Id.*, 291 ; 3 Hawkes, 520 ; Abb. Dig. Corp., 815, 807 ; 25 *Ga.*, 534; Code, §§1684, 1688 ; 13 Allen (Mass.), 29 ; 9 Mass., 423 ; 3 Ala., N. S., 650 ; 25 Mo., 547 ; 41 Md., 583 ; Field Corp., 151, 152.

HALL, Justice.

The Academy of Music, a corporation, brought suit

against the defendant to recover from him a subscription for forty shares of its stock, at $25 per share, aggregating $1,000. The subscription was taken prior to the proceedings incorporating the company, and under the following agreement:

" We, the undersigned, hereby subscribe for the amount of stock opposite our names, and agree to pay the same in four quarterly installments, viz.: February 15th, April 15th, June 15th and August 15th, for the purpose of forming a company to erect an Academy of Music."

By the terms of the charter, which was granted by the superior court of Bibb county, the capital stock of the company was fixed at $50,000, to be divided into two thousand shares.

Under the general law, a corporation created by the court cannot commence to exercise the privileges conferred by its charter until ten per cent of the capital stock is paid in. Code, §1676, sub-section 3. By subsection 2 of the same section of the Code, one of the fundamental conditions upon which such a charter may be granted is that the application therefor shall state " the amount of capital to be employed by the persons making the application actually paid in."

To this suit the defendant filed various pleas, all of which, except the general issue, were, upon motion, stricken by the court. The defendant sought, under the plea of *non assumpsit*, to give in evidence the facts set forth in the special pleas which had been stricken, but upon objection it was rejected, and the plaintiff, by the direction of the presiding judge, had a verdict. The defendant made a motion for a new trial, on many grounds, which was refused.

If the judgment striking all the special pleas was correct, there was no error in any of the subsequent proceedings in the cause, and the motion for a new trial was properly overruled; in short, the entire merits of the defence were covered by the judgment ordering it to be stricken.

Among the pleas thus stricken were several to this effect : that the defendant subscribed for the stock in advance of the application for the charter; that his subscription was upon the express condition that the whole amount of the capital stock should be taken before the company should commence operations, and that the academy should be erected only by the subscribers' money; that while the agreement to which he subscribed did not set forth these facts, it was only an incomplete agreement, and showed upon its face that it did not embody all the terms of the contract; that the charter applied for and obtained required some of these conditions; that it was, in fact, fraudulent, not only on this account, but because of positively false representations made in the application therefor, among others, that one-tenth of the capital stock had been paid in, which amounted to $5,000, when, in fact, a much less sum had been paid; that only twenty-five thousand dollars, or one half of the capital stock, had been subscribed; that on that amount and the property to be purchased, mortgages and bonds had been issued and negotiated, and the money arising therefrom, and not that arising from subscriptions, was used in the purchase of the ground and the erection of the building, and the interest of the stockholders was thereby imperilled and sacrificed to the holders of these bonds and mortgages, who were themselves stockholders; that divers subscribers to the stock had been released; that defendant subscribed on the faith of their names; that he never consented to their release, and had no knowledge that they had been so released; that he gave no consent to the arrangement by which bonds and mortgages were issued to raise money to erect and complete the building; that he was never consulted about the charter, and had no notice, actual or constructive, of the application therefor; that the law was disregarded, in various particulars, as to the filing of the petition in office, as to the publication of notice of the application for the same, and in divers other respects; and he insisted that

the plaintiff was operating under a void charter, and had no right or authority to maintain a suit against him for the amount of stock he had subscribed.

These facts were set forth in quite a number of pleas, but were by reference united in one plea. Each one and such as had a bearing upon its particular subject might not of itself have constituted a complete answer to the plaintiff's suit, but it formed a part of the entire transaction relied on to defeat the action, and, with the others, we think constituted a good defence.

It may be conceded that the charter itself, on account of the failures to conform strictly to the requirements of the law in its procurement, was irregular and erroneous, though not void; and further, that its validity could not be called in question in this collateral and indirect manner. Yet the facts out of which these objections grew have an important bearing upon the main issue, which the defence as a whole forms, and are not only admissible in evidence, but will aid to some extent in reaching the conclusion to be drawn from them, in connection with others alleged in the pleading.

1. It is insisted with confidence that, so far as concerns the conditions upon which the defendant subscribed for stock, he could not go outside of the writing signed by him to establish them by parol evidence, and if the writing was, or appeared to be, complete within itself, this position would be unassailable; but where it does not purport to contain all the stipulations of the contract, then parol evidence is admissible to prove other portions thereof not inconsistent with the writing. Code, §3803, and citations.

A more incomplete agreement than this subscription paper affords, it would be difficult to conceive. That it contemplates the formation of a company of some sort or description to erect an academy of music, to be located somewhere, is evident; but whether this is to be a joint stock company or an incorporation, or whether the building is to be erected in Macon, Savannah, Columbus, Au-

gusta, Rome, Athens, or Atlanta, whether within the limits of Georgia, or some other state or territory; whether it is necessary to raise a thousand or a million dollars to accomplish the purpose of the subscribers, nowhere appears. It is silent as to the form and proportions of the structure, and what is more important still, as to the method or mode of raising the necessary funds to complete and equip it, as well as to the specific purposes for which it is to be used, and as to the way in which its business is to be conducted. To give it any effect whatever, a resort to parol evidence would be indispensable; without it, the paper itself would be almost a perfect blank. It will not do to assume that it is merged in the charter subsequently obtained. Whether the agreement, as understood by the parties thereto, is embodied in that charter, is the very point in dispute, and which can be satisfactorily determined only by the testimony which the defendant offered, but was not allowed to introduce.

2. The subscription to the stock was taken after the charter was obtained, in *Memphis Branch R. R. Co. vs. Sullivan*, 57 *Ga.*, 240, and it was held that the subscriber contracted with reference to the charter: that the number of shares to be subscribed, or the whole capital stock necessary to do the contemplated business, constituted an important element in the contract. A man might agree to make one of ten to raise $1,000, and still might refuse to be one of ten to raise $500. The latter sum might, in his judgment, be wholly inadequate to accomplish the purpose of his subscription; and to subscribe in such a case would be to throw away his money. It was further held, " If the sum fixed by the charter had been subscribed, and yet subscriptions had been released so as to reduce the capital stock largely and materially, without the consent of the subscriber, the effect would be the same as if the stock released had never been subscribed. A mere nominal subscription to fulfill the letter and break the spirit of the contract is no substantial compliance with the charter,

and when released because it was nominal, it becomes equivalent to no subscription *ab initio*."

3. The points of this decision are sustained by numerous adjudications, both English and American, and while it is not the precise case made by this record, yet the principles it announces apply, perhaps, with increased force to the defence here insisted on. It makes no difference that the defendant's subscription was in anticipation and in view of the formation of an incorporated company. Where the capital stock is fixed at a given sum, divided into shares of a certain amount each, the whole amount of the capital stock must be fully subscribed before an action will lie against a subscriber to recover assessments levied on the shares of stock, unless there is a clear provision in the contract to proceed with the accomplishment of the main design with a less subscription than the entire amount of the capital specified, or there is a waiver, either express or implied, of the condition precedent. In Pitchford *et al. vs.* Davis, 5 Mees. & W., 2, where a project had been formed for the establishment of a company for the manufacture of sugar from beet-root, and a prospectus had been issued, stating the proposed capital to consist of 10,000 shares of 25 pounds each, and the directors began their works and entered into contracts respecting them, and manufactured and sold some sugar, but only a small portion of the proposed capital was raised, and only 1,400 out of the 10,000 shares were taken, it was held, on a motion for a new trial, that a subscriber who had taken shares and paid a deposit on them was not liable upon such contracts of the directors, without proof that he knew and assented to their proceeding on the smaller capital, or expressly authorized their making of the contract. Parke, B , *Ib.*, 4, puts this conclusion upon a very satisfactory ground when he says, "the case was properly left to the jury. The defendant, by taking shares in this speculation, gives authority to the directors to bind him by their contracts, in the event of the proposed number of shares being disposed of and the proposed capital

obtained." The authority given the directors to bind the subscribers was conditional only, dependent upon the fulfilment of the terms of the prospectus, and where the condition had not been fulfilled, the defendant was not liable upon the contract of the directors, unless he knows that the directors were carrying on the undertaking with a less capital and had acquiesced in their doing so; then he might become answerable for their future contracts. Per Ld. Abinger, C. B., and Alderson B., who concurred with Parke, B. In Frys, ex'rs *vs.* The Lexington and Big Sandy R. R. Co., 3 Metc. 314, the court of appeals of Kentucky held that, in a suit against a subscriber for shares in a railroad company, where the charter required the capital stock to be subscribed before the corporation can go into operation, it was necessary to aver that fact in the declaration, and that the failure to make such averment might be relied on for a reversal of the judgment, although the question was not made in the circuit court.

While few, or perhaps none of the cases go to this extent, they all agree that the taking of the entire capital stock by the subscribers is a condition precedent to a suit for the recovery of the amount agreed to be taken by each subscriber, and may be insisted on by a special defence to a suit, and when so insisted on will defeat a recovery, unless the condition has been waived by the defendant, and that, whether it has been so waived or not, is a question for the jury, and that this principle is applicable to both incorporated and unincorporated companies. The reason given for this requirement is founded in good sense and sound policy, and is sanctioned by every dictate of justice. An enterprise that would require say $50,000 to carry it on successfully would not, in all probability, succeed with a capital of one-third or one-half that amount; consequently the agreement is, that the entire amount shall be subscribed before the enterprise is undertaken. In addition to the authorities cited by counsel, see Salem Mill-dam Co. *vs.* Roper, 16 Pick., 23; S. C., 9 *Ib.*, 195, Cabot, etc.,

Br. Co. *vs.* Chapin; 6 Cush, 53; 9 Mich., 269; 3 Kan., 76; 61 Me., 384; 30 N. H., 404; 35 Iowa; 118; Fox *vs.* Clifton, 6 Bing., 776; 5 Neb., 50; *Ib.*, 76; *Ib.*, 80; Hale *vs.* Sanborn, Supreme Court of Nebraska, May, 1884, 18 Reporter, 472.

Before there can be any capital stock belonging to a corporation, the number of shares and the value thereof must be fixed; and until this be done, no assessment can be rightfully laid or legally collected. This may be done by the charter (and in this state it would seem an indispensable prerequisite to the granting of the charter by the superior court. Code, 1676, sub-sec. 2). "If so, there must be a subscription for the prescribed amount before an assessment can be made. If not done by the legislature, the amount must be determined by the directors or stockholders." 61 Maine *ut sup.*, and cases cited. The same limitation upon the transaction of business exists as to the ten per cent on the capital stock required by the general law to be paid in. 9 Mich. *ut supra.*

How far the defendant in this case has expressly or impliedly waived his right to insist upon these conditions, or whether he encouraged the erection of the building or participated in the stock-holders' meetings, we are unable to conjecture, as we are not in possession of the facts which would illustrate that issue, or whether such a reply exists at all to the defence pleaded, we do not know. What we decide is, that the pleas stricken, taken as a whole, constituted a legal and good defence, which should have been submitted to the jury, and that there was such error in withholding it as entitles the plaintiff to a new trial.

Judgment reversed.