CITY OF DALLAS V. S. A. GIBBS ET AL.

Decided November 20, 1901.

**1.—Dedication of Streets—Deed—Evidence.**

In an action against a city to recover land dedicated to it by deed for street
purposes, a letter written by the grantor to the city prior to the deed and con-
taining a condition not embodied therein, is not admissible in evidence.

**2.—Same—Title Vested—Delay.**

Where a dedication of land to a city for the purpose of a street was duly
accepted and the street opened up thereon for a part of the way, the right to
the use of the land for street purposes vested in the public, and the dedication
could not be defeated by failure or delay of the city in completing the opening
of the street.

**3.—Same—Facts Showing Acceptance.**

Where, on a dedication of land by deed to a city for street purposes, a
map was executed by the city on which all the land was laid out as a street,
and under a city ordinance two-thirds of the land was opened up for a street,
there was an acceptance of the whole street as conveyed in the deed.

Appeal from Dallas. Tried below before Hon. T. F. Nash.

*W. T. Henry* and *James J. Collins,* for appellant.

*W. A. Kemp* and *Edward Gray,* for appellees.

FLY, Associate Justice.—This suit was instituted by Mrs. S. A. Gibbs, joined by her husband, Barnett Gibbs, to recover from the city of Dallas a strip of land 80 feet wide and 1000 feet long in that city. The cause was tried by the court and judgment rendered for appellees.

It was established by the evidence that on May 29, 1888, the parents of Mrs. Gibbs, now sole heir, conveyed to the city of Dallas a certain strip of land lying between Town Branch and Mill Creek for the extension of Austin street, which at that time only reached Town Branch. The extension was crossed by the right of way of the Gulf, Colorado & Santa Fe Railway Company. The city of Dallas immediately opened up the extension of Austin street as far as the right of way of the railroad company, as well as land dedicated for Lamar street in the same deed, but did not open up that portion of the land dedicated for Austin street lying between the railroad right of way and Mill Creek, and that is the land now in controversy. Austin street is opened up and kept in repair not only up to the right of way, but also beyond Mill Creek, leaving a strip of land 1000 feet long between the right of way and the creek which has never been worked by the city. A portion of the strip has been fenced by an adjacent owner, and two shanties have been erected by negroes on other parts of it. It has not been used as a street. On the same day that the dedicatory deed was made to appellant, a deed was made by the same grantors to the Rapid Transit Company of land bordering on the land dedicated, and it is in that deed recognized as a street. After the delicatory deed was executed, a report of a committee recommending the opening of the street when the deed was delivered to the mayor was passed by the common council of the city of Dallas, and in the "block books," which were composed of plats of the various blocks and subdivisions of the city, and which were compiled by experts employed by the city council, and which were in use in making assessments of taxes for the city, the strip of land in controversy was shown to be a part of Austin street.

The deed executed by Sickles and wife to appellant made an express dedication of the land in controversy to the city for street purposes, and there was a formal acceptance of the conveyance upon the part of the city, and the only question presented is, does the land revert to the heirs of the grantors by a failure of the city to use it, thirteen years having elapsed since the deed was executed?

Several weeks before the deed was executed by Sickles, he had written a letter to the mayor and council of Dallas in which he said: "I will extend Austin street from Town Branch to Mill Creek eighty feet wide for the use of the public, provided the city will put it in such condition that the people from the country and city can use it without interference for the purpose of business and travel." No such condition appears in the deed afterwards made by Sickles, and there is good authority for the proposition that "a condition contained in a prior agreement between the parties, in pursuance of which the deed is made,

but not expressed or referred to in the deed, does not bind the grantee." Jones on Real Prop. and Conv., sec. 326. This view of the law would eliminate the letter from consideration, but we do not think, if it be considered as entering into and becoming a part of the dedicatory deed, that it can make any difference in the proper decision of the question presented by the record.

The city having accepted the dedication of the land, it vested in the public for street purposes, and we are of the opinion that no delay of the city authorities in putting the land to the uses for which it was dedicated can deprive the people of their rights in the street. We think this proposition is sustained by high authority, which will be briefly reviewed. In the case of Barclay v. Howell, 6 Peters, 498, in which suit had been instituted to recover land dedicated to street purposes in the city of Pittsburg, Pa., on the ground of nonuser, the court said: "The right was not necessarily connected with the use within a limited period; as no such condition appears to have been imposed at the time it was granted. * * * It was not essential for the city to show that the entire slip of land referred to had been used as a street, but it was essential that it had been dedicated as such. * * * If this ground had been dedicated for a particular purpose, and the city authorities had appropriated it to an entirely different purpose, it might afford ground for the interference of a court of chancery to compel a specific execution of the trust by restraining the corporation, or by causing the removal of obstructions. But even in such a case the property dedicated would not revert to the original owner. The use would still remain in the public, limited only by the conditions imposed in the grant." The doctrine announced in the foregoing quotation has been approved in a number of cases. Coffin v. Portland, 27 Fed. Rep., 420; Board v. Young, 59 Fed. Rep., 108; Bayard v. Hargrove, 45 Ga., 351; Harrison v. Augusta, 73 Ga., 440; Haight v. Keokuk, 4 Iowa, 215; Leffler v. Burlington, 18 Iowa, 364; Good v. St. Louis, 113 Mo., 276; Williams v. Society, 1 Ohio St., 496; Chapman v. Wilbur, 4 Ore., 365; Williams v. Milwaukee (Wis.), 48 N. W. Rep., 667.

In the case of State v. Travis County, 85 Texas, 440, it was said: "It is contended that by the dedication public rights were acquired in the use of the land, which could not be impaired nor destroyed by the action of the county nor the authority of the State, and that it is only when the use becomes impossible of execution that property dedicated to public uses, without any provision for forfeiture, reverts or the right to such use becomes extinct. Commonwealth v. Rush, 14 Pa. St., 186; Barclay v. Howell, 6 Pet., 498; Williams v. Society, 1 Ohio St., 478; Mayor of New Orleans v. United States, 10 Pet., 662. We think that the doctrine contended for is correct when applied to some dedications, but not to all, nor to the one now under consideration. If the land had been dedicated unqualifiedly to public uses, if, for instance, the words 'public park' had been written upon the plat, instead of the words 'courthouse' and 'jail,'—we think that the public, as well as the pur-

chasers of adjacent lots, would then have acquired rights in the property beyond the power either of the State or the county to divert or affect; and if in such case an attempt had been made to defeat or modify the enjoyment of such rights, then the remedy would have been to compel their observance by appropriate legal proceedings, which any owner of adjacent lots could have instituted."

The Texas decision rests on a distinction therein drawn between dedications which can not be defeated by the municipal government, such as for streets, squares, or parks, and those which can be defeated, such as for courthouses, city halls, etc., which may be removed to other localities. With that distinction we are not concerned in this case, except in so far as the decision in effect holds that a dedication for purposes of streets or parks can not be defeated by a failure to use on the part of the municipal authority.

In the case of Archer v. Salinas County (California), 28 Pacific Reporter, 839, it was said: "Whenever the dedication is complete, the property thereby becomes public property, and the owner loses all control over it, or right to its use. Even though the acceptance presumed from an express dedication may not impose upon the public all the obligations that an express acceptance would impose, yet the owner is as much concluded by his dedication in the one case as in the other. If the dedication is complete by his act, whether express or implied, it is thereafter irrevocable by him, and the effect of such dedication can not be qualified by any act or declaration thereafter made on his part. The property dedicated has become impressed with the use for which it was dedicated, and neither can the public divert it from that use, nor can it be lost by adverse possession. Nor is the effect of such dedication impaired by any delay in the use of the land for which it was set apart. Such failure to make use of the land does not authorize the owner to resume possession. The public can thereafter appropriate the land to the use for which it was dedicated, whenever convenience or necessity may suggest."

We conclude that the letter written by Sickles should not be considered in connection with the deed, but that if it is so considered, that the land having been by Sickles and wife expressly dedicated to street purposes, and the dedication having been accepted by resolution and by opening up a portion of the street, the use of the land for street purposes became vested in the people of Dallas, and that those rights can not be defeated or destroyed by the failure of the city council to work the street.

The judgment of the District Court is reversed, and judgment here rendered that appellees take nothing by their suit and that appellant recover all costs of this and the lower court in this behalf expended.

*Reversed and rendered.*

ON MOTION FOR REHEARING.

To sustain the contention of appellees it would be necessary to hold that when land is deeded to a city for street purposes, working a large portion of the dedicated land is no evidence of an acceptance under the deed, and that as to the portion not worked, a forfeiture will arise in favor of the grantor. We do not think that such contention has met with recognition in any text book or adjudicated case. On the other hand Elliott, in his work on Roads and Streets, cites the case of Town Council v. Lithgoe, 7 Richardson Law, 435, as holding "that digging a public well in the way was evidence of acceptance," and he adds: "We have no doubt of the soundness of this decision, for no matter what the particular act is, if it be one which could only be rightfully done upon a highway, it should be regarded as evidence of acceptance." Elliott on Roads and Streets, p. 116, and cases cited in footnote.

If digging a well in the dedicated land is an acceptance of the land for street purposes, much more so would it be acceptance when two-thirds or perhaps more of the land is at once opened up as a street. This act evidenced an acceptance of the whole street as conveyed in the deed, and if there had been no other circumstance, it was sufficient to establish acceptance upon the part of the city. There was, however, in addition, a map executed by the city in which all the land was laid out as Austin street, as well as an ordinance ordering the opening of the street when the deed was delivered. An acceptance could not be more fully proved than it was in this case. The motion for rehearing is overruled.

*Overruled.*

Writ of error refused.