CITY OF OMAHA v. FANNIE E. RICHARDS, ADMINIS-
TRATRIX.

FILED MARCH 3, 1897.   No. 6581.

Municipal Corporations: PONDS: DEATH OF CHILD: LIABILITY OF CITY. The former decision in this case (49 Neb., 244, 68 N. W. Rep., 528) adhered to.

REHEARING of case reported in 49 Neb., 244. *Affirmed*.

*W. J. Connell* and *E. J. Cornish*, for plaintiff in error.

*Breckenridge & Breckenridge* and *L. F. Crofoot*, contra.

NORVAL, J.

An opinion was handed down in this case at the last term affirming the judgment below (49 Neb., 244, 68 N.

City of Omaha v. Richards.

W. Rep., 528). On application of the city a rehearing was granted, and the cause has been argued and submitted to us for determination.

It is contended that the facts developed by the undisputed testimony are different from what they were assumed or stated to be in the opinion already filed. That the direction of South Twenty-fifth street, in the city of Omaha, was incorrectly given in that opinion when filed, is conceded; but it was an immaterial error, which did not in the least degree control the conclusion reached,—an error which has been corrected in the official report of the case. We will briefly notice the alleged inaccuracies in the statement of facts in the former opinion.

The city attorney insists that plaintiff's intestate was drowned on private property, and that this court was in error when it stated there was a conflict in the evidence as to whether the drowning occurred in the street or upon premises adjacent thereto. The record reveals that some of the witnesses testified that young Weston lost his life in the water on Mr. Connell's lot, while Lewis Peterson states it as his opinion the boy was drowned in the water on the street. It escaped the attention of the writer that the further examination of the witness Peterson developed the fact that he was not in a position to have seen the accident, which point was not urged on the former hearing, else the court would not have been led to suppose the evidence was conflicting as to the exact place where Weston went down, when the witnesses competent to speak upon the subject agree that the accident happened on Mr. Connell's property, near the street. But this misconception of the evidence did not lead to the affirmance of the judgment, because the case was tried by both parties upon the theory that it made no difference whether the drowning occurred in the street or upon private property, and the city attorney requested the trial judge to so instruct the jury and the request was given. Again, it was distinctly stated in the opinion filed that "it is quite immaterial whether `

he [the boy Weston] was drowned in the water in the street or on the adjacent premises, in close proximity to the street, since the negligence of the city caused the accumulation of the water, consisting of a single body extending nearly one-fourth the distance across the street to the abutting properties, and farther, that the raft containing the deceased floated from the street upon the properties abutting thereon. * * * It would have been different if the pond had been entirely upon private property, and not in close proximity to a street. In such case there would be no liability upon the city, since it would have been guilty of no breach of duty. It is undisputed that this pond of water extended into the street, and the city cannot escape liability merely because the drowning occurred upon the adjacent premises." The language just quoted shows that the conclusion then reached was in no manner influenced by the assumption that there was competent evidence to establish that the place where the boy was drowned was not on private property, but in the street.

It is also urged that the proofs were insufficient to justify the conclusion of the court on the former hearing, that the accumulation of water was occasioned by the negligence of the city in grading the street in question and constructing the storm sewer therein; but, on the contrary, that the pond was created by Connell and Clarke making a fill in the draw on their premises, thereby damming up the water. It is true that those parties filled in a portion of their lots with earth in such a manner as to constitute a dam across the draw or ravine in question a short distance below where it is crossed by South Twenty-fifth street, which caused the water coming into the ravine to back up across said street, and formed the pond in which Weston was drowned. It is likewise undisputed that the city raised the grade of the street for a portion of its width at the point where it intersects said ravine, and that the manhole connected with the storm sewer was located west

of this embankment and near the west line of the street, and was constructed to such a height above the natural surface of the ground as to prevent the drainage of the water from the pond into the sewer. Had the manhole been properly put in, and another one, or a catch basin, had been provided near the east line of the street, connected with a drain leading into the sewer, no water would have accumulated in the street, and the sidewalk which was used by the boys as a raft would not have become detached and floated upon the water, and in all probability Weston would not have lost his life. The negligence of the city in the respect indicated contributed to the accident. It cannot escape responsibility on the ground that the embankment or dam constructed by private parties upon their own properties caused the surface water coming down the ravine to back up over the street in question. Even though the city may have had no right to go upon the lots of Connell and Clarke to remove the dam, or to drain the pond thereby formed, it could, at least, have made proper provision for the draining of the water from the street. Having failed so to do, it was guilty of negligence.

The former opinion is criticised because the only reference therein to the authorities cited by the city was the mere statement that they were not based upon similar facts to those in the case at bar. To emphasize what was then said, a brief reference to some of the cases will be made, although a review of all will not be attempted.

In *Omaha & R. V. R. Co. v. Martin*, 14 Neb., 295, the railroad company in grading its road-bed had made a deep excavation within its right of way. In the night-time, Martin, with a heavily loaded wagon, left the main traveled highway and followed some tracks in which the public had traveled, but which had not been used for several months, and in so doing drove his team into said excavation and was injured. This court held the company was not liable, inasmuch as it had been guilty of no breach of legal duty.

In *Murphy v. City of Brooklyn*, 118 N. Y., 575, a boy was drowned in an excavation on private property, about sixty feet from the street, caused by the pressure of sewerage from an adjoining sewer. The excavation was separated from the street by an embankment, faced with a wall, upon which was a fence. It was ruled that there could be no recovery against the city.

*Charlebois v. Gogebic & M. R. R. Co.*, 91 Mich., 59, was an action to recover damages for the death of plaintiff's intestate, a boy eight years old, caused by drowning in a pond of water on defendant's right of way. The judgment of the trial court for the company was affirmed on appeal. To the same effect are *Overholt v. Veiths*, 6 S. W. Rep. [Mo.], 74; *Moran v. Pullman Palace Car Co.*, 36 S. W. Rep. [Mo.], 659. Those decisions are the same as the case of *Richards v. Connell*, 45 Neb., 467.

The syllabus of *Goeltz v. Town of Ashland*, 44 N. W. Rep. [Wis.], 770, is as follows: "In an action against a town for the death of a boy, caused by an alleged defective highway, it appeared that the town authorities had built a wagon road or bridge, twenty feet wide, guarded on both sides by a substantial railing, across a ravine, and that twenty feet north of the wagon road they had built a sidewalk, also properly guarded by rails. Between the sidewalk and the road, and from four to six feet below, there was an open space not used for travel, in which someone, without authority from the town, had dug a hole four feet deep that had become filled with water. While attempting to fill a rubber ball, and to get a drink at the hole, the boy fell into the water and was drowned. Held, that as the town had prepared a sufficiently safe track for the public travel, both for teams and footmen, it was not guilty of any negligence, and a verdict was properly directed for defendant."

The facts in *Witte v. Stifel*, 28 S. W. Rep. [Mo.], 891, are reflected by the syllabus in the following language: "Plaintiff's son, seven years old, went up to one of the cellar windows of a building in the process of construc-

tion, in a large city, which was about three feet from the street line, and tried to draw himself up by taking hold of a stone placed across the top of the window frame. The stone, not being fastened, fell and killed him. It was not shown that the owners of the building and the contractors knew of the dangerous position of the stone, or that children were in the habit of playing around the building. Held, that plaintiffs cannot recover, deceased having been a trespasser." This case would be in point if this suit was against Connell, instead of the city.

After much reflection and reinvestigation of the authorities, we are constrained to adhere to the views announced on the first hearing upon the questions of law then presented. A further discussion of them would be superfluous. Under the undisputed facts in the case the plaintiff was entitled to recover. The opinion heretofore filed is not in conflict with the decision in *Richards v. Connell*, 45 Neb., 467. The principles distinguishing the two cases are too marked to require mention here.

Attention is called to the tenth and fifteenth requests of the city to charge, which were refused, and which were not considered upon the former hearing. They are as follows:

"10. If you find from the evidence that the pond was caused by surface water accumulating on the streets and property adjacent thereto by reason of banks of earth deposited on the private property of Mr. Connell and Mr. Clarke, which prevented the free and natural flow of the surface water in that locality, then and in that case you are instructed that the defendant was not guilty of negligence in allowing said pond to accumulate, and your verdict will be for the defendant.

"15. You are instructed that the burden of proof is upon the plaintiff to prove, by a preponderance of the evidence, either that the defendant knew of the condition of the street in question, or that the said street had been in such condition on prior occasions, so as to have be-

come of such general notoriety that the defendant is presumed to have known its condition as to becoming flooded after rain."

The first of these requests was erroneous, inasmuch as it made the case turn upon the fact whether the surface water accumulated in the street and upon the vacant property resulted from the fill of earth made by Connell and Clarke on their lots, rather than from the negligence, or the want thereof, of the city in not providing suitable drainage of the water from the street. There was no dispute that the dam caused the water to back up on the street, and had such request been given, the jury, had they followed its command, could not have escaped returning a verdict for the city. As to the other request, it was sufficiently covered by the charge of the court. The former decision is adhered to.

AFFIRMED.