The City of Pittsburg v. The Epping-Carpenter Company, Appellant.

*Wharves—Landings—Rivers—Dedication.*

Where a recorded plan of lots shows a space between the lots and a river, and lots have been sold according to the plan, and the public has used such space for over fifty years, and the legislature has conferred upon the borough in which the land is included the right to maintain and control the space as a wharf, and the borough has paved the space, there is a valid dedication of the wharf to public use.

Where a wharf has been dedicated to public use, the municipality in which it is situated has no power, in the absence of legislative authority, to relinquish the rights of the public in the wharf.

Where a wharf dedicated to public use has been used by the public for many years, and then obstructed and filled in by a railroad company and other parties, the city has the right to remove the obstruction.

*Equity—Jurisdiction—Public wharf.*

A city has a standing in equity to maintain a bill for an injunction to restrain persons from obstructing a wharf which has been dedicated to public use.

*Dedication of property to public use—Acceptance—Nuisance.*

Acceptance by the public of property dedicated to public use need not be immediate, but may be made when public necessity or convenience arises. As a corollary to this proposition it follows that it is not necessary that the public use the entire property dedicated. Any public use of part of the property, indicating a purpose to accept the gift, fixes the public right to the whole. When the public right has been acquired, it cannot be lost by nonuser or by municipal action not expressly authorized by law. Any occupation of the property inconsistent with the public right is a nuisance, and no length of time will legalize a public nuisance.

Argued Nov. 1, 1899. Appeal, No. 166, Oct. T., 1899, by defendant, from decree of C. P. No. 1, Allegheny Co., March T., 1898, No. 470, on bill in equity. Before GREEN, McCOLLUM, MITCHELL, DEAN, FELL and BROWN, JJ. Affirmed.

Bill in equity for an injunction against the erection of buildings upon a public wharf.

The facts appear by the opinion of SLAGLE, J., which was as follows:

FINDINGS OF FACT.

The bill in this case was filed for the purpose of restraining the defendant from using and erecting permanent buildings

upon a piece of land in the seventeenth ward, Pittsburg, which plaintiff alleges is part of the public wharf of the city of Pittsburg. In the answer the defendant denies that it was ever dedicated to public use, and, if it was, alleges that it was subsequently abandoned. The case was put at issue, ordered for trial and testimony taken in open court. From the undisputed allegations of the bill, admissions in the answer and evidence produced at the hearing, the facts of the case are found as follows:

The land in dispute is part of a large tract of land for which a patent was issued to Conrad Winebiddle, December 31, 1787, and which afterward became vested in one William B. Foster.

On June 1, 1814, William B. Foster made a plan of lots upon which a space was left between the lots and the Allegheny river, but there was no designation of the purpose for which it was so left, but on it is a note stating that the plan was changed because the lots as originally located extended into the river, showing that this space was purposely so left. The entire tract was in 1826 sold by the sheriff to the Bank of the United States as the property of William B. Foster. It does not appear that William B. Foster sold any lots in this plan, but it was shown that the Bank of the United States sold many lots, in the conveyances of which they recognized the said plan, describing the lots by their numbers, and presumably the entire tract was so sold by the bank or its successors. By deed dated February 6, 1829, said bank conveyed lots Nos. 1, 2 and 3 to John Scott under whom the defendant claims title, lot No. 1 being the lot along which the land in dispute lies. Neither William B. Foster, the bank of the United States, nor any other person owning the title appears to have exercised any ownership over the land in dispute. On the contrary, one of the owners, Robert Kingan, during his ownership, in 1883, caused a plan of his property to be made showing Boroughs street, now called Forty-first street, extending beyond its original limit to Water street, and the land now in dispute marked as "city wharf." Prior to that time a fence had been erected by Kingan, or some predecessor in title, along the line of the alleged wharf, considerably off the line of the lot as indicated by the plan, but the space between these two lines is not claimed by the city in the present controversy.

The land in dispute is a triangular piece between Forty-first street, extended to the river, and the line of lot No. 1, as shown by the Kingan plan, and the plan attached to the bill marked " city wharf." The property in dispute fronts upon the Allegheny river. It has no frontage on the channel between the main land and Wainwright's island, as claimed by defendant. The head of the island was at or near Fortieth street.

As to the use of this property, the testimony of witnesses called did not go back to a date earlier than about 1850, but the use of the property as testified to by them did not commence within their recollection. At that time a roadway extended from about the end of Boroughs street along the line of the fence, being the line of the wharf as now claimed by the city, to and across Water street, to the river. At this point there was established a ferry, and a skiff ferry was maintained by a man named Bray, who lived in a house on Boroughs street, but it does not appear to have been in any way appurtenant to his tenancy. The landing was also used by many persons, principally for the landing of lumber and stone and other building materials, which were unloaded upon the land and carried over it, and subsequently it was used for receiving material and shipping oil from the refineries in that neighborhood. It was used by all persons who so desired and for any purpose for which it was suitable.

The borough of Lawrenceville was incorporated February 18, 1834, and the land in dispute was within its limits. About the year 1866, the borough of Lawrenceville extended Boroughs street to the river, and caused it to be paved, and in connection therewith the space now claimed as a city wharf. It was paved with cobble stones, and ringbolts placed in it suitable for mooring craft landing at that point. Prior to that time the legislature, by Act of April 2, 1860, P. L. 592, declared the street or wharf along the northern boundary line of the borough of Lawrenceville to be a public landing, and said borough was authorized to regulate the same and to collect wharfage. There was at that time no wharf to which the act could apply except the one now in dispute and Water street in connection with it.

The borough of Lawrenceville was consolidated with and became a part of the city of Pittsburg, January 1, 1868, under the

provisions of the act of April 6, 1867. In the year 1881, the city of Pittsburg granted to the Junction Railroad Company a right of way for a branch railroad along the Allegheny river from Eleventh street to Negley's run, and under said grant a railroad was constructed across this land. The track was erected upon a trestle which left a passageway underneath to the river. The landing and wharf continued to be used as such for several years after the construction of the railroad. About the year 1892, the Junction Railway Company filled under the trestle and thus obstructed the passage to the river. The land east of Forty-first street, which had been used as a wharf, remained open and was used as a dumping ground until about 1893, when the defendants erected a fence along the eastern line of Forty-first street as extended, thus enclosing the space formerly paved and used as a wharf as part of their lot. After the filling up of the Junction road the land in dispute was not used by the city or the public as a wharf or landing.

By the act of April 11, 1866, the borough of Lawrenceville was authorized to lay out and adopt a general plan of the borough, etc. Among the records of the city of Pittsburg is a general plan of the borough of Lawrenceville, which includes the Foster plan with others. Upon it is entered an affidavit made by James S. Devlin, which states that it was made during the year 1866 by authority of the councils of the borough of Lawrenceville and adopted by them March 22, 1867. On this plan Boroughs street, now Forty-first street, is extended of a uniform width of forty feet to the Allegheny river, and the land in dispute appears as a part of the lot of S. and R. Kingan.

At No. 140, September term, 1896, in the matter of the construction of a sewer on Forty-first street, the assessment plan shows Forty-first street extending to Water street, and the property of the Epping-Carpenter Company as bounded by Forty-first street and Water street.

Several acts of assembly are offered in evidence referring to the high and the low water marks of the river and the channel between the main land and Wainwright's island, but as we have found that the property in dispute did not extend to that channel, those facts are not material to the present issue and need not be considered.

OPINION OF THE COURT.

The questions of law arising out of the facts of this case are as follows:

1. Was there a dedication of the land in dispute for public use?

2. If so, has the public right been extinguished?

3. Has this court jurisdiction to restrain the occupation of the land by the defendants, at the instance of the city of Pittsburg?

The dedication of land for public use by means of plans has been so long and so often recognized that the citation of authorities is scarcely necessary. Probably more than one half of all the streets, squares, wharves and public grounds in this state have been so dedicated. All the public wharves of the city of Pittsburg are so held: Commonwealth v. McDonald, 16 S. & R. 390; Birmingham Boro. v. Anderson, 48 Pa. 253; Schenley v. Pittsburg, 104 Pa. 472. It is true that acceptance by the public is necessary to fix the right. But it is not necessary that this should be by municipal authorities, or that it should be immediate: Commonwealth v. Alburger, 1 Whart. 469; Commonwealth v. Moorehead, 118 Pa. 344. Acceptance by the municipal authorities is only necessary to make the municipality responsible for the care of the property. But this need not be by formal ordinance. Any exercise of authority is sufficient: Phila. v. Thomas, 152 Pa. 494.

In this case it was shown that the public had used the land in dispute as a public wharf and landing beyond the memory of witnesses who testified to knowledge of the place for about fifty years, and that such use was continued until within five or six years of this time. It was also accepted by the legislature by Act of April 2, 1860, P. L. 592, which conferred upon the borough of Lawrenceville the right to maintain and control it as a wharf. This power was exercised by the borough when it caused it to be paved in 1867. It was also shown that many lots were sold by reference to the plan, having no other description, among them, the lots owned by the defendants, and presumably all the lots have been so sold.

A sale of lots by a plan is a contract with the purchasers, not only granting the right of way or use to them, but also for public use: 2 Sm. L. C. 225; Heckerman v. Hummel, 19 Pa.

64.   We therefore find as a matter of law that there was a valid dedication of the land in dispute to and for public use.   When such dedication has been perfected like any other executed gift, it became irrevocable : 3 Washburn on Peal Property, 72.

In Pennsylvania a highway is the property of the people, not of a particular district, but of the whole state, who, constituting as they do the legitimate sovereign, may dispose of it by their representatives and at their pleasure : McGee's Appeal, 114 Pa. 476 ; In re Philadelphia and Trenton Railroad Co., 6 Whart. 25 ; Heckerman v. Hummel, 19 Pa. 64.   A municipality may be charged with the care of a public highway or other public grounds, but cannot dispose of it or relinquish the rights of the public unless specially authorized by the legislature so to do.   Hence we have numerous laws, general, special and local, authorizing the vacation of streets and change of use of public grounds.   If then the borough of Lawrenceville, or the city of Pittsburg, had expressly relinquished its rights in this public wharf, it would have been ineffective.   Much less can such result arise by inference from acts indicating such intention if proved.   But we do not find such intention to be shown by the acts of either of these municipalities.

Accepting the plan of Lawrenceville, attested by the affidavit of Mr. Devlin, as an established plan of the borough, the inference that it was intended to abandon the land in dispute is refuted by the facts that about the same date the borough caused it to be paved and furnished with facilities as a wharf ; that it came into the city of Pittsburg in this condition, was used by the public, and the then owner of lot No. 1 recognized it as such in 1883.   The construction of streets across the channel between the mainland and Wainwright's island by the city of Pittsburg had no such purpose or effect, for the reason that the landing is wholly above the head of the island.

The location and construction of the Junction railroad over this land was authorized by the city of Pittsburg, but it does not appear that the city authorized its construction in such a manner as to obstruct the passage to the river.   Nor do we find that the legislature has indicated any purpose to relinquish the public rights or to abandon the public use.   The Act of April 8, 1870, P. L. 1048, refers to the channel south of Wainwright's island, and does not affect the landing on the property in dispute,

which, as we have said, is above the head of the island.  Nor
do the acts of assembly and proceedings in relation to the high
and the low water lines affect the case.  The Act of April 16,
1858, P. L. 326, expressly preserves all public and private
rights, and merely extends those rights to the river as thus de-
fined.

Until about 1893, the passage to the river was kept open.
It was then obstructed by the Junction Railroad Company by
filling up under its trestle, so far as appears, without any au-
thority.  The wharf was then filled up south of the railroad by
defendant and others also without authority.  This has caused
the disuse of the property as a wharf, but a disuse of a public
right does not forfeit the right.  This is clearly shown by the
authorities heretofore cited and by many others in this state
and elsewhere.  The city may at any time resume its authority
and perform its duties to the public.  All obstructions may be
removed by the city or any person interested may institute
legal proceedings to cause their removal by the city or others
responsible for their maintenance.  We therefore find as a mat-
ter of law, that there has been no abandonment of the public
rights acquired by the original dedication of the land in dispute.

We have no doubt as to the right of the city of Pittsburg to
maintain this bill.  The city having assumed control of the
property, it became a trustee for the public: Rung v. Shone-
berger, 2 Watts, 23.  As such it has a direct and legal interest
in the matter.  Besides it has a direct pecuniary interest in the
right to collect tolls and wharfage.  The fact that it has not
exercised this right does not destroy it.  There is no adequate
remedy at law.  It is true that the defendant might be indicted
for maintaining a nuisance after the erection of its buildings.
So individuals have remedy for a private wrong by action of
trespass.  But this has never been held to preclude the restrain-
ing of a continuing nuisance by injunction: Commonwealth v.
Rush, 14 Pa. 186; Commissioners of Moyamensing v. Long, 1
Parsons, 143; Philadelphia v. Thirteenth and Fifteenth Sts.
Pass. Railway Co., 8 Phila. 648.  But aside from this, the ques-
tion of jurisdiction was not suggested until after the hearing
in this case in the argument by counsel.  This is too late to
raise the question: Bank v. Loeffert, 184 Pa. 164.  A perpet-

ual injunction will therefore be issued, and it is directed that the defendant pay the cost.

Subsequently the court made this order:

And now, to wit: June 3, 1899, counsel for plaintiff and defendant, being present in open court, and objections being made to the decree presented, the case is opened for the taking of further testimony to determine the northeastern line of the public property.

SLAGLE, J., filed the following supplemental opinion:

In the opinion heretofore filed in this case, we found that there had been a valid dedication of the property in dispute as a public wharf, by a plan of the borough of Lawrenceville laid out by William B. Foster, and subsequently adopted by the Bank of the United States, the purchaser of his title, who accepted the plan and sold lots by reference to it. We also found that the dedication had been accepted by public use, by legislative recognition and improvement by the borough of Lawrenceville, and that by sales of lots and those acts of acceptance the dedication was irrevocable by act of the owner or any one claiming under him, and further that there had been no abandonment of the public rights. At that time we were under the impression that the plaintiff only claimed the property as it had been paved and occupied as a wharf, and so stated in the opinion. This statement was not made from any express declaration to that effect, but from the general trend of the testimony. We then directed a decree to be drawn without specifying the lines. When the decree was prepared it was discovered that plaintiff claimed all the property northwest of the line of lot No. 1 as shown on Foster's plan. The bill is broad enough to cover such a claim. It also appeared that the lines of the paved wharf were not definitely fixed on the ground by actual survey. We then directed that the case be opened for the purpose of fixing the southeastern line of the public property, and in order that all the questions arising might be properly decided, we directed the fixing on the ground of three lines—the line of the original lot No. 1—the line of the paved wharf—and the line of the ground occupied by Kingan in 1883 as shown by Edeburn's survey. It is necessary to determine which of these lines should be adopted, and for this purpose to refer to the testimony

bearing upon this question which was not specially considered in our former opinion.

Foster's plan was acknowledged January 26, 1815. Upon the plan as recorded is a memorandum as follows: " On measuring accurately the ground lying between Washington street. and the Allegheny river, it is found necessary to make the lots large enough to throw out of the plan lots Nos. 9, 65 and 76." These are corresponding lots in three tiers and lie on the southern side of Washington street now Willow street. The result of this change would be to shift Washington street and all the lots northwardly fifty feet further south. By the plan as recorded there are seven lots, Nos. 2 to 8 inclusive, between lot No. 1 and Washington street, each fronting fifty feet on Boroughs street, now Forty-first street, and running eastwardly 145 feet to Ewalt's line. No. 1 is of irregular shape. It has a front of eight and seven tenths feet on Boroughs street; on the southerly side 145 feet; along Ewalt's line 200 feet, and the fourth a straight line diagonally from Boroughs street to the northerly end of the 200 foot line nearest the river.

The first conveyance of lot No. 1 was by the Bank of the United States to John Scott, by deed dated February 26, 1829, which conveys lots Nos. 1, 2 and 3 as marked in plan of village of Lawrenceville, now in possession of party of the first part, etc. By deed dated July 14, 1834, John Scott conveyed to Elijah Akin part of lot No. 1 and lots Nos. 2 and 3, described as follows: " Beginning at line of lot number four, on general plan of said borough, adjoining lands of Samuel Ewalt and running thence by the lines of lots Nos. 2 and 3 and part of number one, northwardly 150 feet; thence parallel with the line of lot number two, westwardly to Boroughs street; thence south along Boroughs street 150 feet to the corner of lot number four, and thence along the line of said lot number four to Ewalt's line, being 146 feet to the place of beginning." This deed also refers to the plan of Lawrenceville as recorded. This property was conveyed to Samuel and Robert Kingan by deed dated May 14, 1853, with the same description. The remainder of lot No. 1 became vested in Samuel and Robert Kingan by proceedings in partition of the estate of John Scott in the orphans' court at No. 4, March term, 1840, and deed of John Kingan and wife to them, dated December 30, 1841, the only

description being by reference to the number in the plan. In the conveyance by Scott to Akin, and Akin to Kingan of lots Nos. 2 and 3 and part of lot No. 1, though no distance is given for the line from Ewalt's property to Boroughs street, it is evident that it was intended to make a square lot by ignoring the diagonal line and running by a straight line to Boroughs street, as if Boroughs street extended forty-two and three tenths feet farther north than is indicated by the plan as amended. Upon this lot a brick house was erected which was occupied by the ferryman. The diagonal line, as shown on the amended plan and as claimed by the city, runs through this house. A short distance below the house a fence was erected running diagonally towards the river, nearly parallel with the lot line as shown on the plan. Outside the fence a roadway extended to the river near the ferry landing. This was the condition of the property at the time of the earliest recollection of any witness called. In the mean time the borough of Lawrenceville was incorporated in 1834.

About 1844 the Kingans acquired two pieces of land lying to the eastward from Samuel Ewalt, in the deeds for which Water street is referred to as laid out by him, and the entire property was then known as Kingan's brickyard. In 1867 the borough of Lawrenceville caused Forty-first street and the wharf to be paved, and a curb was set along or near the line of Kingan's fence. In 1883 Mr. Kingan had a survey of his lot made by Mr. Edeburn. In 1885, partition of Kingan's estate was made in the orphans' court, at No. 10, September term, 1885. In the deed conveying this ground to Koehler & Company, it is described as bounded by the Allegheny Valley railroad, Forty-first street, property of Kirkpatrick and the Allegheny river. In 1893, Koehler sold to Epping-Carpenter Company, and de-described the property as bounded by the same lines, but limiting his warranty to a much smaller tract, having a front of forty-six and forty-three one hundredths feet on Forty-first street north of the Allegheny Valley railroad. Epping-Carpenter Company then put up the fence complained of in the bill. This was the first attempt to use the property beyond the lines indicated in Edeburn's survey of 1883.

The legal principles affecting the question now under consideration are well established. Most of them were considered

in our former opinion and may be briefly stated as follows : property may be dedicated for public use by plans indicating that purpose. Such dedication becomes irrevocable when the interest of third persons is acquired by sale of lots or acceptance for the public by public use or municipal action. Acceptance by the public need not be immediate, but may be made when public necessity or convenience arises. As a corollary to this proposition it follows that it is not necessary that the public use the entire property dedicated. Any public use of part of the property, indicating a purpose to accept the gift, fixes the public right to the whole. When the public right has been acquired, it cannot be lost by nonuser or by municipal action not expressly authorized by law. Any occupation of the property inconsistent with the public right is a nuisance, and no length of time will legalize a public nuisance.

The mere making of a plan, even if recorded, does not constitute a complete dedication, until the rights of third persons have accrued by sale of lots or public use; the property remains under the control of the owner and the plan may be modified or abrogated by him at will. Under these principles we have decided that there was a dedication by William B. Foster, adopted by the purchaser of his title of land for a public wharf, accepted by the public, and not abandoned. The acceptance by the public fixed the public right to the whole of the property dedicated, and no private use of any part of the property, however long continued, affects that right. The only question is, what property was dedicated? When the line of the property dedicated has been ascertained, the defendant can have no title or right of possession beyond it.

The difficulty in determining the question arises from the change in the plan, and the conduct of the parties owning lot No. 1. When the original plan was made, lots Nos. 9, 65 and 76 adjoined Washington street on the south. When they were eliminated Washington street was shifted fifty feet towards the south, and occupied the space of those lots. Presumably the whole of the plot of lots below Washington street would be shifted to the same extent, and the vacant ground outside the lots be enlarged accordingly. We so assumed in our former opinion. We then understood that the original plan carried the lots to or near the river, and that the purpose of the change

was to make a space between them.   The surveys since made
on the ground show this to be a mistake.   The line of lot No. 1
on the original plan does not extend even as far as Water street,
as subsequently laid out by Ewalt.   It is evident that the north-
erly or diagonal line of lot No. 1 upon the original plan, and the
end of Boroughs street where that line diverged, would be on
the ground fifty feet further north than it would be after Wash-
ington street was shifted that distance southward, if all the
lines were so shifted.   A critical examination of the memoran-
dum of change on the Foster plan in view of the actual surveys
lately made, shows that the purpose is somewhat obscure.   It
distinctly directs the elimination of lots Nos. 9, 65 and 76,
which involves the shifting of Washington street.   This is said
to be necessary to make the lots large enough.   What lots are
to be enlarged is not stated, but the only lots which could be
so affected without an entire change of the plan, were those
nearest the river.   The effect of such a change either enlarges
the lots or the vacant space outside of them.   There is no sug-
gestion of an intention to enlarge the vacant space dedicated
to the public, while the intention to enlarge the lots is ex-
pressed.   We think a reasonable construction of this memoran-
dum is that Washington street and the lots northwardly are
shifted fifty feet to the south, and the additional space between
lot No. 1 and the original line of the dedicated property should
be added to that lot.   This view is sustained by the acts of the
parties interested as above stated.   The Bank of the United
States sold lot No. 1 to John Scott, by number only, without
other description.   This was in 1829.   Scott sold part of the
lot to Akin in 1834, describing it by lines running to and along
Boroughs street, which did not exist at that point if it was
shifted southwardly fifty feet, but which still existed if Bor-
oughs street and the vacant ground remained as in the original
plan, and the lots only were shifted, and the space thus left
added to lot No. 1.   A house was built upon the lot conveyed
by Scott to Akin, which was partly on the public ground if en-
larged as claimed by the plaintiff.   A fence was built on or
near the line of the lot as thus enlarged, and the property has
been so used longer than any witness remembered—has been
so used to this time, and the borough of Lawrenceville paved
the property outside this line.   Though none of these acts

would destroy the rights of the public in any part of the property dedicated to public use, they are pertinent in determining what was dedicated. We therefore find that the rights of the public are limited to the ground dedicated to public use as shown by the original plan of William B. Foster, and that the defendant should be restrained from occupying or otherwise interfering with the public use of the same.

We find the southeasterly line of the public wharf, dividing it from defendant's property, to commence on the southeast line of Boroughs, now Forty-first street, at the distance of $408\frac{7}{10}$ feet from the northwestwardly side of Washington, now Willow street, as now located, and running thence northwardly to intersect the southeasterly line of lot No. 1 at the distance of $608\frac{7}{10}$ feet from Willow street aforesaid.

The court subsequently entered the following decree:

And now, August 5, 1899, this cause came on to be heard on bill, answer, replication and testimony taken, and was argued by counsel, and upon consideration thereof, it is ordered, adjudged and decreed as follows:

1. The said defendant, the Epping-Carpenter Company, be, and it is, hereby perpetually restrained and enjoined from in any manner using, occupying or trespassing upon the property described in the said bill as a public highway or wharf, the southeastern line of the public wharf, dividing it from defendant's property, commencing on the southeast line of Boroughs, now Forty-first street, at the distance of $408\frac{7}{10}$ feet from the northwestwardly side of Washington, now Willow street as now located, and running thence northwardly to intersect the southeastwardly line of lot No. 1 in William B. Foster's plan of Lawrenceville, at the distance of $608\frac{7}{10}$ feet from Willow street aforesaid.

2. It is further ordered and decreed that the said defendant within thirty days from the date of this decree, remove and take away from the said property the fence erected by it along the line of Forty-first street and the line of Water street upon the said property, also within said thirty days, shall remove and take away from and off the said property described in paragraph one of this decree, all buildings, structures or other obstructions placed or now maintained thereon by the said defendant.

3. The said defendant be, and is, hereby perpetually restrained and enjoined from erecting any building or structure of any kind or nature whatsoever upon the said property.

4. And it is further ordered that the defendant pay the costs of these proceedings.

*Error assigned* was the decree of the court.

*Levi Bird Duff*, for appellant.—To constitute a dedication there must be something more than the mere leaving of a vacant space on the plan between the lot line and the water; there must be something on the plan, or proof of surrounding circumstances, showing an intention to make a public highway along the river. This is shown by a reference to the cases cited by the court. Com. v. McDonald, 16 S. & R. 390, and Schenley v. Pittsburg, 104 Pa. 472, are based on Wood's plan of the city of Pittsburg.

There never was an official adoption by the borough of Lawrenceville of Foster's plan, nor any adoption by ordinance, plan or survey of the alleged wharf, nor of any portion of it. The acceptance, therefore, by the public depends alone on public user: Com. v. Royce, 152 Pa. 88.

There is no proof that it was a public ferry; we have no such ferry in Pennsylvania. It was a private ferry, and the operator collected toll or ferriage. Moreover it was a private ferry appurtenant to Kingan's land. This was not a public use: Root v. Com., 98 Pa. 170.

The borough never made any rules or regulations concerning this portion of the river front, or any other portion of it, never collected any tolls, and so far as is shown by the evidence never exercised any authority over it.

Assuming the dedication by Foster and the improvement of the wharf by the borough of Lawrenceville, as alleged, the plaintiff cannot now claim this land as a wharf against the defendant. Whether the land fronted on the island channel or not, it must be conceded that the closing of the channel has affected the river at this point, and that it no longer flows by lot No. 1 as formerly.

The court seems to doubt its jurisdiction, but says the objection was made too late. But the objection to jurisdiction could

not be made until the evidence was heard.   We do not question the right of the city to enjoin the obstruction of a highway in a proper case.   But we deny the right of the city to maintain a bill for an injunction under the facts disclosed in this case.   The allegations of the bill are specific as to the dedication, location and improvement of the highway or wharf.   The defendant could not demur.   It was forced to go to trial.   On the trial it appeared that the dedication was uncertain ; that the location of the highway had not been fixed by ordinance or survey ; that, even if it existed, it had actually been abandoned and was not in use at the time the bill was filed ; that the shore of the river where the wharf is claimed to be is radically altered, and the conditions surrounding the defendant's property have so changed that it cannot be restored to its former water rights and privileges by a re-establishment of the alleged wharf. Under these circumstances, which must have been known to the plaintiff, this suit cannot be maintained : Bunnell's App., 69 Pa. 59 ; New Castle v. Raney, 130 Pa. 546.

*J. H. Beal,* with him *Clarence Burleigh* and *A. J. Niles,* for appellee.—The thing complained of by this bill is a public nuisance, maintained by the defendants, by fencing in and obstructing a portion of a public wharf or highway ; and a court of equity has full jurisdiction to prevent such nuisance : Act of June 16, 1836, sec. 13, P. L. 784 ; Commissioners of Moyamensing v. Long, 1 Parsons, 143 ; Philadelphia v. 13th ånd 15th Sts. Pass. Ry. Co., 8 Phila. 648.

The city of Pittsburg shows a complete and legal dedication of the land in controversy in this case for public purposes : Boro. of Birmingham v. Anderson, 48 Pa. 253 ; Schenley v. Pittsburg, 104 Pa. 472 ; Yates v. Milwaukee, 10 Wallace, 497 ; Zug v. Com., 70 Pa. 138 ; Grogan v. Town of Hayward, 4 Fed. Rep. 161.

The defendant has no shadow of title to the land which it has fenced in and upon which it proposes to erect buildings.

The court will observe that there was no abandonment of the property : Com. v. Alburger, 1 Wharton, 469 ; Com. v. Moorehead, 118 Pa. 344 ; Com. v. McNaugher, 131 Pa. 55 ; Hoadley v. San Francisco, 50 Cal. 265 ; Jersey City v. Morris Canal & Banking Co., 1 Beasley, 547 ; Burbank v. Fay, 65

N. Y. 57; New Orleans v. U. S., 10 Peters, 662; Webb v. City of Demopolis, 95 Ala. 116; Board of Education v. Martin, 92 Cal. 209; County of Yolo v. Barney, 79 Cal. 375; City of St. Louis v. Missouri Pacific Ry. Co., 114 Mo. 13; Bank v. City of Oakland, 90 Fed. Rep. 691; Sims v. City of Frankfort, 79 Ind. 446; Cheek v. City of Aurora, 92 Ind. 107; Wolfe v. Town of Sullivan, 133 Ind. 331; Town of Woodruff Place v. Raschig, 147 Ind. 517; Nicolai v. Davis, 91 Wis. 370; Sims v. Chattanooga, 2 Lea, 694; Yates v. Town of Warrenton, 84 Va. 337; Cincinnati v. White, 6 Peters, 431.

The line of the public property, as fixed by the court, is very favorable to appellant, and in fact gives it more ground than it is entitled to.

Per Curiam, January 2, 1900:

The issue arising upon this record embracing as it does the question of the dedication of the ground in dispute to public use so long ago as 1834, presents a subject of much interest historically as well as legally. The case was tried with great ability by the learned counsel on both sides, and the findings and opinion of the learned court below exhibit a patient and very painstaking investigation of all the facts and legal questions arising. After a careful study of the testimony and a comparison of it with the findings of fact by the court, we are constrained to say that we are not convinced by the very able argument of the learned counsel for the appellant that there was any error either in the findings of fact or the conclusions of law appearing on the record. We have no doubt as to the jurisdiction of the court to entertain the plaintiff's bill. We affirm the decree upon the opinions of the court below including the findings of fact appearing therein.

Decree affirmed and appeal dismissed at the cost of the appellant.