## DOYLE v. CITY OF CHATTANOOGA.*

### (*Knoxville.* September Term, 1913.)

1. **NEGLIGENCE.** Contributory negligence. Acts in emer-
gency.

Even if contributory negligence could be attributed to a young
boy, he would not be guilty of such negligence in jumping into
a pond to save his young brother from drowning, having acted
in an emergency. (*Post, p.* 438.)

Case cited and approved: Railroad v. Ridley, 114 Tenn., 727.

2. **DEDICATION.** Streets. Acceptance. User.

The acceptance of a street by a municipality may be implied from
a general and long-continued use thereof by the public as of
right. (*Post, p.* 438.)

Cases cited and approved: Phillips v. Stamford, 81 Conn., 408;
Railroad v. State, 60 Tenn., 55; Hill v. Hoffman (Ch. App.),
58 S. W., 932; Downend v. Kansas City, 156 Mo., 60; Benton v.
City of St. Louis, 217 Mo., 687.

3. **DEDICATION.** Acceptance of streets.

The use of a street by the general public may operate as an
acceptance thereof so as to bind the dedicator and make the
dedication irrevocable. (*Post, p.* 440.)

Cases cited and approved: Mathis v. Parham, 1 Tenn. Ch., 533;
State v. Hamilton, 109 Tenn., 286.

---

*The question of the care required of one in a sudden emergency
is treated in a note in 37 L. R. A. (N. S.), 43. And on the question
whether voluntarily incurring danger to save the life of another
constitutes contributory negligence, see notes in 49 L. R. A., 715
and 27 L. R. A. (N. S.), 1069.

As to whether public user amounts to acceptance of dedicated
highway, see note in 18 L. R. A., 510. And for dedication and ac-
ceptance of streets so as to make municipality liable for defects
or obstructions therein, see note in 20 L. R. A. (N. S.), 558.

The authorities on the doctrine of attractive nuisance are col-
lated in an extensive note in 19 L. R. A. (N. S.), 1094.

128 Tenn. 28

4. **MUNICIPAL CORPORATIONS. Acceptance of streets.**

If a strip, offered to be dedicated as a street, contains thereon a
nuisance, such as a dangerous pond, slight acts of acceptance
by the municipality would be sufficient to show an acceptance
so as to make it liable for injuries arising from the pond.
(*Post, p.* 440.)

Cases cited and approved:   Attorney-General v. Abbott, 154 Mass.,
323; Town Council v. Lythgoe, 7 Rich. (S. C.), 435; Campbell
v. Elkins, 58 W. Va., 308; Brewer v. Pine Bluff, 80 Ark., 489;
Gibbs v. Ashford, 27 Tex. Civ. App., 629; Dallas v. Gibbs, 27
Tex. Civ. App., 275.

5. **DEDICATION. Acceptance.**

If the tract dedicated as a street is clearly defined as by a map,
and the public use is practically of the whole tract dedicated,
it is presumed that an act accepting a part of the tract dedi-
cated is an acceptance of the whole.   (*Post, p.* 441.)

Cases cited and approved:   Town of Derby v. Alling, 40 Conn.,
410; Pittsburg v. Epping-Carpenter Company, 194 Pa., 318;
Dallas v. Gibbs, 27 Tex. Civ. App., 275; Village of Lee v. Harris,
206 Ill., 428.

6. **MUNICIPAL CORPORATIONS. Dangerous streets. Accept-
ance of dedication.  Sufficiency of evidence.**

Evidence *held* to make it a jury question whether a tract con-
taining a dangerous pond was accepted by a municipality as a
street.   (*Post, pp.* 441, 442.)

7. **NEGLIGENCE. Attractive nuisances.**

The owner of dangerous machinery, naturally attractive to a child,
is liable for injuries to one attracted thereto, while the ma-
chinery is on the owner's premises.   (*Post, p.* 444.)

Cases cited and approved:   Whirley v. Whiteman, 38 Tenn., 610;
Railroad v. Cargille, 105 Tenn., 628; Sioux City, etc., R. Co. v.
Stout, 17 Wall., 657; Lynch v. Nurdin, 1 Ad. & E., N. S., 29;
Cooke v. Midland, etc., R. C. [1909], A. C., 229; Union Pac. R.
Co. v. McDonald, 152 U. S., 262.

Cases cited and distinguished:  Cooper v. Overton, 102 Tenn., 211; Railroad v. Ray, 124 Tenn., 16; Bottum's Administrator v. Hawks, 84 Vt., 370.

## 8. MUNICIPAL CORPORATIONS.   Defective streets.

A city was responsible for the death of boys eleven and nine years of age by drowning in a pond which occupied the whole width of a public street, about 120 feet from a public park, in analogy to the rule imposing liability for maintaining an attractive nuisance.  (*Post, pp.* 445, 446.)

Cases cited and approved:  Busse v. Rogers, 120 Wis., 443; Secard v. Lighting Co., 147 Wis., 614; Kelly v. Southern Wis. R. Co., 152 Wis., 328; Kessler v. Berger, 205 Pa., 289; Kramer v. Southern R. Co., 127 N. C., 328; City of Omaha v. Richards, 49 Neb., 244; Linnberg v. Rock Island, 136 Ill. App., 495.

---

FROM HAMILTON

---

Appeal from Circuit Court, Hamilton County.—FRANK M. THOMPSON, Special Judge.

M. N. WHITAKER and JEPTHA BRIGHT, for plaintiff.

W. L. FRIERSON and GARVIN & CANTRELL, for defendants.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

Under the above case style two separate actions have been prosecuted by M. A. Doyle, as administrator, to recover for the death of each of two sons by drowning in an artificial pond, claimed to be within the limits of a street of the defendant city, known as Bluff street.

It appears that many years ago a quarry was worked, by the then owner of the land, on the site of the pond complained of; the excavation of stone was to a depth of about eighteen feet below the natural surface, and after the abandonment of the quarry water accumulated, forming a pond of that depth, approximately.

The pond covers the entire width of what is claimed to be the street, and overlaps a few feet on some of the abutting lots, hereinafter referred to. The excavation also formed a bluff on and near the side of the street, which bluff overhung precipitously the water in the pond.

The city maintains as pleasure grounds Jackson Park, about 120 feet distant from this pond; a wire fence intervened, over which a stile had been erected, and a path led from this stile towards the pond.

The two deceased sons of plaintiff, one aged eleven and the other aged nine years, with a third small boy, Leiby, went to the park to play, and after swinging in swings, there provided, for a time, one of the Doyle boys suggested that they all go to the pond. This they did; and, after throwing rocks in the pond for a while, they climbed the overhanging stone bluff towards the top, when the younger Doyle lost his footing and fell into the pond. The place where he slipped was on an abutting lot, a few feet from the street's margin. His older brother, Alex, cried to him: "Stay up; I'll get you or go with you." Young Leiby grabbed Alex in an effort to keep him out of the pond, but the latter fought, bit young Leiby, and forced his release,

and then jumped into the pond to rescue his younger brother. Both sank in the water overlaying the street.

The plaintiff administrator seeks to recover on the theory that the city allowed an attractive and enticing nuisance to exist in a public street; the city defends on grounds: (1) That such pond is not such an attractive nuisance as can render the municipality liable; and (2) that there exists no such street as a public highway; that there has never been an acceptance of same on the part of the city authorities or otherwise.

In 1891 a land company platted the territory surrounding this pond into blocks, lots, streets, and alleys, and registered the plat. One of the streets was platted through this pond, Bluff street, which is a short street about three city blocks in length. Later, in 1907, this territory was annexed to the city of Chattanooga. For from ten to twenty years prior to annexation, and ever since, there has been a considerable travel by the usual modes over this street for its entire length, except that when the pond was reached, the travel was diverted over private property just to one side of the pond, and near the street margin, returning again into the street after the pond was passed. This street was level in comparison with other near-by parallel streets, and also ran diagonally, and for these reasons was sought by travelers.

It was in proof that the city had placed a fire plug on Bluff street, and that this street had been platted as such on city map or maps. There was proof that

some work had been done on the street, but it was too indefinite to establish that it was done by the city authorities.

The neighborhood, along cross and parallel streets, is thickly settled, but only a few face Bluff street. Complaints of the pond had been lodged by residents there touching the pond, which could have been fenced or filled. The trial judge excluded proof offered to the effect that other children had been drowned in the pond.

A motion of the city for peremptory instructions in its favor was sustained. On appeal the court of civil appeals affirmed that ruling; and the case is here for review on writ of *certiorari*.

If there be liability on the part of the city for the death of the younger Doyle boy, there would be for the death of his older brother. If contributory negligence could be attributed to a child of tender years in any event, still, he having acted in a sudden emergency to save the life of another in imminent danger, such negligence could not be predicated on his conduct. *Railroad* v. *Ridley*, 114 Tenn., 727, 86 S. W., 606.

One of the main defenses of the city was its nonacceptance of the dedicated street; and on this, chiefly, it prevailed in the lower courts.

"It may now be considered as the prevailing opinion that an acceptance may be implied from a general and long-continued use by the public as of right. The later decisions upon the subject will, when analyzed, be found to be well bedded in principle. . . . The

municipal corporation consists of the inhabitants, and not the officers; the officers are, in truth, nothing more than the agents of the corporation.  The inhabitants, therefore, stand to the officers as principals, and if the principals have, by their conduct, accepted the dedication, it is of no great importance that the agents have taken no action in the matter.  The inhabitants of a locality having, by long-continued use, treated the way as a public one, they make it such without the intervention of those who derive their authority from them."  Elliott, Roads & St. (2 Ed.), sec. 154; 3 Dillon, Mun. Corp., sec. 1087; *Phillips* v. *Stamford,* 81 Conn., 408, 71 Atl., 361, 22 L. R. A. (N. S.), 1114; *Southern P. R. Co.* v. *Ferris,* 93 Cal., 263, 28 Pac., 828, 18 L. R. A., 510 and note.

The contrary doctrine is declared in 13 Cyc., 467; but our case of *Railroad* v. *State,* 1 Baxt., 55, as construed and followed in *Hill* v. *Hoffman* (Ch. App.), 58 S. W., 932, opinion by the present chief justice, evidences, to say the least, a trend toward the doctrine announced by Elliott and by Dillon.  However, a decision of this case would not necessarily call for a ruling on that point, though it may be noted that the great weight of authority is in favor of the rule thus declared.  Indeed, the case most relied upon by the writer of Cyc.'s article on Dedication (*Downend* v. *Kansas City,* 156 Mo., 60, 56 S. W., 902, 51, L. R. A., 170), has been repudiated by the same court in the later case of *Benton* v. *City of St. Louis,* 217 Mo., 687, 118 S. W., 418, 129 Am. St. Rep., 561, and see mono-

graphic note appended, the writer of which, after sum-
marizing the cases, stated that the decided weight of
authority is as we have indicated. We hold, in accord
with our previous cases, to that rule.

Certain it is that, even under the minority rule, a
user by the general public, in its unincorporated ca-
pacity, may operate as an acceptance on its part, bind-
ing the dedicator by way of consummating the dedica-
tion, and placing it beyond revocation on his part. 13
Cyc., 465; *Mathis* v. *Parham,* 1 Tenn. Ch., 533; *State*
v. *Hamilton,* 109 Tenn., 286, 70 S. W., 619.

If, in this attitude of the way, under that rule, there
be therein a nuisance, such as a dangerous artificial
pond, it seems to us that it would be a harsh pronounce-
ment of the law that any liability therefor continues to
rest on the dedicator; the public in travel enjoying the
use of the way the while. *Attorney-General* v. *Abbott,*
154 Mass., 323, 28 N. E., 346, 13 L. R. A., 251.

Under such conditions, slight acts of acceptance on
the part of the incorporated body, standing for that
public, should be sufficient to bring upon it the bur-
dens, as well as the benefits, of the dedication.

In *Town Council* v. *Lythgoe,* 7 Rich. (S. C.), 435, it
was held "that digging a well in the way was evi-
dence of acceptance" by the municipality, and of the
decision it is said in Elliott, Roads and Streets, 116:
"We have no doubt of the soundness of this decision,
for, no matter what the particular act is, if it be one
which could only be rightfully done on a highway, it
should be regarded as evidence of acceptance." See,

also, Dil. Mun. Corp. (5 Ed.), sec. 1807, note; *Campbell* v. *Elkins*, 58 W. Va., 308, 52 S. E., 220, 2 L. R. A. (N. S.), 159; *Brewer* v. *Pine Bluff*, 80 Ark., 489, 97 S. W., 1034. It would seem that the placing of a fire plug within the limits of Bluff street is one so similar as to be the legal equivalent of the act of digging a well.

The execution of an official map by the city, showing the street offered to be dedicated to be such, has also been held to be evidence of an acceptance. *Gibbs* v. *Ashford*, 27 Tex. Civ. App., 629, 66 S. W., 858; *Dallas* v. *Gibbs*, 27 Tex. Civ. App., 275, 65 S. W., 81.

Where the dedication is clearly defined, as in this case by registered map, and the public user is of the whole, practically speaking, the presumption is that an act of acceptance of a part thereof is an acceptance of the whole. *Town of Derby* v. *Alling*, 40 Conn., 410; *Pittsburg* v. *Epping-Carpenter Company*, 194 Pa., 318, 45 Atl., 129; *Dallas* v. *Gibbs*, 27 Tex. Civ. App., 275, 65 S. W., 81; *Village of Lee* v. *Harris*, 206 Ill., 428, 69 N. E., 230, 99 Am. St. Rep., 176; 3 Dil. Mun. Corp. (5 Ed.), sec. 1088. If we were proceeding under the minority rule, it would not be necessary for us to decide that either of the above acts—the placing of the hydrant or the execution or adoption of the official map —would of itself support a finding of acceptance on the part of a municipality, under the situation referred to, since here both of these acts concur, in combination with long user of the street by the public, beneficial to the public. There was sufficient evidence, in

any view, to take the case to the jury on the question of fact of acceptance by the public authorities.

If, therefore, the quarry pond may be deemed, or may be by a jury found, to be within the limits of Bluff street, may the City of Chattanooga be held liable to the plaintiff administrator on his contention that the city had permitted the pond to exist as an attractive nuisance?

This court is committed to the doctrine of the liability of the owner for the maintenance of negligently exposed dangerous machinery, attractive to a child, in the exercise of his natural instinct or curiosity injured thereby, even though the machinery was on the owner's private premises. *Whirley* v. *Whiteman,* 1 Head, 610.

The principle was applied by this court to a turntable, so maintained, in *Railroad* v. *Cargille,* 105 Tenn., 628, 59 S. W., 141, which cites as authority the "turntable case" of *Sioux City, etc., R. Co.* v. *Stout,* 17 Wall., 657, 21 L. Ed., 745, which cited and relied on the case of *Lynch* v. *Nurdin,* 1 Ad. & E., N. S., 29, 1 Q. B., 30, 41 E. C. L., 422, as did also our case of *Whirley* v. *Whiteman,* supra.

The English courts have recently approved *Lynch* v. *Nurdin,* and carried forward its doctrine in an application of same to a turntable case (*Cooke* v. *Midland, etc., R. C.* [1909], A. C., 229, 5 Ann. Cas., 557); while the supreme court of the United States has adhered to the doctrine of the *Stout case,* and evinced its willingness to advance its application to case of attractive nuisance in the form of a slack pit, beneath the sur-

face of which the slack was burning. Mr. Justice HAR-
LAN, in the opinion, said: "If the company left its
slack pit without a fence around it, or anything to give
warning of its really dangerous condition, and knew
or had reason to believe, that it was in a place where
it would attract the interest or curiosity of passers-
by, can the plaintiff, a boy of tender years, be regarded
as a mere trespasser, for whose safety and protection
while on the premises in question, against the unseen
danger referred to, the railroad company was under
no duty or obligation whatever to make provision?"
*Union Pac. R. Co.* v. *McDonald,* 152 U. S., 262, 14 Sup.
Ct., 619, 38 L. Ed., 434, holding liability.

Many of the State courts of last resort have, how-
ever, declined to accept the doctrine of the turntable
case; and others, which apply it to turntables and
other dangerous machinery on private premises, deny
its application to artificial ponds so located. Many of
the authorities are reviewed in the case of *Cooper* v.
*Overton,* 102 Tenn., 211, 52 S. W., 183, 45 L. R. A., 591,
73 Am. St. Rep., 864, and *Railroad* v. *Ray,* 124 Tenn.,
16, 134 S. W., 858, Ann. Cas., 1912D, 910, *Bottum's
Administrator* v. *Hawks,* 84 Vt., 370, 79 Atl., 858, 35
L. R. A. (N. S.), 440, Ann. Cas., 1913A, 1025, and note.

We need only observe that we have not in the case
in hand an attractive nuisance on private premises.
However, the courts that deny liability in turntable
cases do so on the ground that under common law prin-
ciples, as construed by them, the attractiveness of the
instrumentality or object causing the injury cannot be

construed into or as the equivalent of an invitation to a child, on the part of the owner of the premises, and that, without an invitation, express or implied, no duty of active care arises even in respect of a child of tender years going on the premises.

In the case at bar, the attractive object was in a place (within the limits of a public street) where a child had a right to go, on invitation such as is impliedly given to the public at large. A trespass could not be imputed to an approach to or use of such a public street. The city cannot be heard to say that the boys were without invitation to go upon the street. Therefore the point of difficulty with some courts in granting remedy in cases of the character noted does not here appear.

In the case of *Busse* v. *Rogers,* 120 Wis., 443, 98 N. W., 219, 64 L. R. A., 183, it was held that one who, is using a street adjoining his property piled lumber there in an unstable manner was liable for injuries caused by its fall upon a child who, in play, attempted to climb upon the pile, and thereby caused the lumber to fall. The court said: ''This is not the case of an owner of land putting an attractive and lawful but dangerous machine or thing upon his own property and leaving it ungaurded. It is the case of an owner placing an unlawful nuisance in the highway and leaving it unguarded . . . Had a loose timber fallen from the pile by reason of sole negligent piling, and injured a traveler passing on the sidewalk, there would be but little doubt of the liability of defendants, and of the

city as well, provided the danger was one which had existed long enough so that the city officials should have known of it. . . . The central idea is that children are liable always to be upon the public streets, and also are liable to turn aside from traveling and play, or meddle with attractive things left thereon; that a reasonable man must bear this fact in mind, and hence may not negligently or willfully place upon the street a dangerous . . . trap, well calculated to arouse the admiration or curiosity of a child, and, when it has accomplished the natural result which might be reasonably expected escape the consequences by saying that the injured child should not have yielded to his curiosity.'' In accord are the later cases of *Secard* v. *Lighting Co.*, 147 Wis., 614, 133 N. W., 45; *Kelly* v. *Southern Wis. R. Co.*, 152 Wis., 328, 140 N. W., 60, 44 L. R. A. (N. S.), 487; *Kessler* v. *Berger*, 205 Pa., 289, 54 Atl., 887, 61 L. R. A., 611.

In *Kramer* v. *Southern R. Co.*, 127 N. C., 328, 37 S. E., 468, 52 L. R. A., 350, the same doctrine was held and applied.

In *City of Omaha* v. *Richards*, 49 Neb., 244, 68 N. W., 528; *s. c.*, 50 Neb., 804, 70 N. W., 363, it appeared that the city had allowed a pond to collect in an accumulation of surface water on a portion of a street and abutting lots and that a boy, ten years old, got on a detached plank of a sidewalk, at the time floating on the water, and used same as a raft, and while so doing was drowned in water that overlaid the lots of the abutting owner.

The pond was near a public school building and without safeguards. The court held that it "was negligence on the part of the city to leave the pond of water unguarded, knowing that children would be attracted to such a place." See, also, *Linnberg v. Rock Island,* 136 Ill. App., 495.

The city of Chattanooga, which was under obligation in its corporation capacity to abate nuisances, has permitted a condition to exist in one of its streets liable to cause injury to children of tender years, when a jury might find it knew or should have known that children were liable to be lured thereby to hurt or death. Whatever may be claimed for an owner of private premises on which such a pond is allowed to exist, or for the argument based upon the *meum* and *tuem* view of property rights, lying so pronouncedly at the base of the decisions in favor of such private owner, we hold that a city cannot, under the circumstances here appearing, stand acquitted as having had due regard for the protection of the child life within its borders; and this regard the law, in its increasing humanity, should be solicitous to enforce.

In withdrawing the two cases against the city from the jury there was error; each is reversed and remanded; costs of the appeal will be paid by the city.