# Walker, Appellant, *v.* Erie.

*Wharves—Deed—Covenants—Rental.*

Where a municipality by deeds conveys land along a water front and agrees that the grantees in the various deeds might build wharves from their lots into a canal basin, and have the free and absolute use of them forever, and the further right to use the whole length of the public pier as a roadway, and the municipality covenants that it will not rent the pier to other individuals, the municipality may charge wharfage fees to others for the landing of merchandise on the pier, without violating the covenant relating to rentals.

In such a case where a covenant in the deed provides that each of the lot owners should "leave at the end of his wharf in front of his store house and adjoining the public pier, an open space of the

same width of his lot and of the length of thirty feet," for the convenience of each of the respective owners in loading and unloading goods, the municipality cannot construe the covenant as making the thirty-foot strip a part of the public pier and therefore a part of the public driveway.

Argued April 11, 1916. Appeal, No. 130, April T., 1916, by plaintiff, from decree of C. P. Erie Co., Sept. T., 1914, No. 6, on bill in equity in case of T. B. Walker v. City of Erie. Before ORLADY, P. J., HENDERSON, KEPHART, TREXLER and WILLIAMS, JJ. Decree modified.

Bill in equity for an injunction. Before WALLING, P. J.

The opinion of the Superior Court states the case.

The court below found, inter alia, the following conclusions of law:

2. That notwithstanding the agreement, the said pier continued to be and is a public and not a private pier, and while the plaintiff has a preference over the general public in the use of that part of said pier in front of his premises, the general public is not thereby excluded from the use thereof.

3. And the said city has the right to prescribe reasonable rules and regulations for the use of said pier by the public and to collect wharfage or dockage therefor; so that such use by the public does not obstruct or injure the convenient use of the same by the plaintiff.

4. That the plaintiff is entitled to the free use of the said pier in front of his said property for the purpose of the receipt or shipment of merchandise, etc., therefrom, and without the payment of any wharfage to the city on account thereof.

5. That neither the plaintiff nor the defendant has the right to place or authorize to be placed upon said pier any permanent structures or obstructions so as to interfere with the free use thereof.

6. That while owners of said water lots from time to time collected wharfage from third parties using the pier

in front of their respective premises, and while the said Borough of Erie from time to time passed ordinances fixing the rate of wharfage to be received by the borough on account of the use of such public dock, which ordinances seem never to have been enforced, it does not appear that that city acquiesced in the said acts of the property owners or that the property owners acquiesced in the said acts of the borough so as to afford such contemporaneous construction by the parties of the contract of 1837 as to control or change the legal effect thereof,— more especially as the language of said contract does not seem to be in any sense ambiguous.

7. That while the city may authorize third parties to use said pier for the purpose of the transfer of merchandise, etc., in providing for such use care must be taken at all times to leave sufficient space to accommodate plaintiff's business thereon; and the city cannot authorize third parties to use the same for the permanent storage of lumber or other like articles.

8. That any revenue derived from the use of said pier by the public belongs to the city and not to the owners of adjoining lots.

The court entered a decree in accordance with the conclusions of law.

*Error assigned* was the decree of the court.

*Frank Gunnison* and *T. A. Lamb,* for appellant.—The plaintiff maintains that the privilege given to vessel owners or consignees of cargoes of lumber or other merchandise to unload, pile, and store lumber, by the city for a compensation, is renting the pier to other individuals.

The plain and unambiguous language of the contract not only does not warrant the finding of the court, but is clearly repugnant to it. The use contemplated by it would be prevented if it was "made into a driveway and left open for general use," as found by the court. There

was absolutely no evidence upon which to base such finding.

*H. Bedford Duff,* for appellee.—If the construction of the contract for which the plaintiff contends were its correct meaning, then it is submitted the fifth paragraph of the contract would be illegal; as an attempt on the part of the borough and council to deprive the general public of their rights in said public wharf: Commonwealth v. Rush, et al., 14 Pa. 186; Kittanning Academy v. Brown, 41 Pa. 269; Kopf v. Utter, 101 Pa. 27.

OPINION BY WILLIAMS, J., October 9, 1916:

The correct construction of contracts made in 1837 and 1846 between the predecessors in title of the parties to this controversy is the issue raised by this appeal. A bill in equity was filed to restrain the defendant from renting to others a wharf over which the plaintiff claimed the right of control and beneficial use, and to restrain the defendant from interfering with plaintiff's use thereof. The court below in refusing the injunction held that the plaintiff did not have the exclusive right to the beneficial use of the wharf, and, also that a certain 30-foot space on the front of the plaintiff's lot was included in the wharf affected by the decree. From that decree the present appeal has been taken.

The Borough of Erie, being the owner of land and water rights in a canal basin, sold lots along the water front to various people prior to 1837, and being desirous of promoting uniformity in the improvement of the basin and wharves entered into a contract with the lot owners whereby it was agreed, inter alia, that they could build wharves, from their lots into the canal basin for a distance of 200 feet, of which they, their heirs and assigns were to have "the free, absolute and entire possession, enjoyment, privilege and use forever......with the right of erecting storehouses and other buildings thereon" and a further right to use the whole length of

the public pier as a roadway; that it would not rent the same to other individuals or permit the same to be obstructed so as to injure the convenient use of the same; and that "the said owners of lots shall leave on the north end of his said wharf or platform in front of his storehouse and adjoining the public pier, an open space of the same width of his lot and of the length of 30 feet from north to south, such open space being intended for the convenience of each of the respective owners of lots in the loading and unloading of goods, wares, merchandise and other articles and as a convenient place for the occasional depositing of bulky articles,......" The contract also provided that the lot owners could build out a second story of their warehouse over this 30-foot strip.

It appears from the findings of fact that the borough and city, at various times passed ordinances prescribing fees for wharfage and other charges. The lot owners also collected fees from various persons using the public wharf from 1860 up to 1909. In 1910 the city began enforcing the payment of the fees for wharfage which inured from merchandise (lumber, coal, ore, etc.) part of which was landed and stored in front of the plaintiff's lots.

There are two questions involved: (1) as to whether the city, by collecting wharfage fees, had technically rented the public wharf to others, and (2) whether under the contract the thirty-foot strip designated therein for the use of the owners of each lot "was made into a driveway and left open for general use."

The appellant's contention that the charging of wharfage was a renting of the public docks is based entirely upon his definition of renting. Wharfage charges have always been considered as differing from ordinary rent. It is a toll or duty for the pitching or lodging of goods upon a wharf, or pay for taking goods into a boat and from thence: Kusenberg v. Browne, 42 Pa. 173, 179. The parties intended to make a legal contract. To grant away the right of the public to control the public

wharves would not have been effective: Pittsburgh v. Epping-Carpenter Co., 194 Pa. 318.    The city had the right and duty to regulate the use of the wharf: Penny Pot Landing v. Philadelphia, 16 Pa. 79.

The finding of the court that the thirty-foot strip in front of each lot was a part of the public wharf is not justified by the record.    The language of the contract shows that this strip was part of the premises conveyed to the lot owners.    There is no reservation by the defendant of any right in it.    Its purpose was to facilitate the transaction of the business of the lot owners.    The city could as well claim the right to let others use the warehouse room inside the buildings as to claim that the space in front of the warehouses, part of the property of the lot owners, is public property.    It is only fair to state that counsel for appellant admit that the attention of the learned court below was not called to this feature of the case.

The claim to the exclusive beneficial use of the public part of the wharf by the appellant was properly found against him, but there being no basis for the finding that the thirty-foot strip was a part of the public driveway, the decree should be modified to that extent.

The appeal is dismissed and the record remitted to the court below with directions to modify the decree in accordance with the views expressed in this opinion.